**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| PATRICK ERNSTER, RAMSEY HOFIUS and TREVAR BLACK, individually and on behalf of all others similarly situated; | Case No.: 3:24-cv-462-wmc Hon. William M. Conley |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MANITOU EQUIPMENT AMERICA, LLC and MANITOU NORTH AMERICA, LLC, | |
| Defendants. | |

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Patrick Ernster, Ramsey Hofius and Trevar Black ("Plaintiffs") bring this Class Action Complaint against Manitou Equipment America, LLC and Manitou North America, LLC (collectively, "Manitou" or "Defendants"), individually and on behalf of all others similarly situated ("Class Members"), and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters:

**INTRODUCTION**

1.      Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard personally identifiable information including, but not limited to, Plaintiffs' and Class Members' name, Social Security Number, and date of birth (collectively, "PII" or "Private Information").

2.      Defendants, Manitou North America and Manitou Equipment America, are American subsidiaries of Manitou Group,  a French heavy equipment manufacturer of forklifts, cherry pickers, telehandlers, and other heavy equipment. Manitou supports an "extensive dealer

network of more than 450 locations that provides Manitou, Gehl, and Mustang by Manitou products and services." Manitou is "focused on creating valuable solutions for [] customers in the construction, agriculture, rental, and industrial markets."

3.    To manage and keep track of their employees, Defendants collected and maintained Private Information from Plaintiffs and Class Members—which includes present and past employees of Defendants.

4.    On December 24, 2023, Defendants identified they were subject to a cyberattack (the "Data Breach").[1] Defendants investigated the Data Breach and confirmed that an unauthorized actor accessed Defendants' systems that day and had access to files that included its employees' data.[2]

5.    Defendants' Notice of Data Breach[3] states the following:

> On December 24, 2023, Manitou became aware that an unauthorized third party had gained access to some of Manitou's systems on December 8, 2023. Immediately upon learning of the incident, Manitou isolated the impacted environment and began an investigation with the help of a leading forensic security firm that specializes in data security incidents. As part of the investigation, Manitou also worked with third-party data mining experts to identify who was impacted by this incident. These experts analyzed the impacted data to determine what personal information may have been accessed. This process took time. After the investigation, it was determined that your personal information was accessed and/or acquired by the third party during the incident. While Manitou does not have any evidence of fraud using your personal information at this time, we are nonetheless informing you of this incident because we take this matter seriously. While Manitou did notify law enforcement of this incident, this notice was not delayed at the request of law enforcement.

> **What Information Was Involved**

> You are receiving this letter because either you or your family member applied for a line of credit and/or financing with Manitou or were a personal guarantor of a line of credit or financing. Your personal information that

---

[1] Defendants' Notice of Data Breach to Plaintiff Patrick Ernster, attached as Exhibit A.
[2] *See Id.*
[3] *Id.*

was impacted includes Date of Birth, Social Security Number (Full).

6.      It is unknown for precisely how long the cybercriminals had access to Manitou's network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to its current and former employees' PII.

7.      On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendants' failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

8.      Plaintiffs bring this class action lawsuit on behalf of themselves and those similarly situated to address Defendants' inadequate safeguarding of Class Members' Personal Information that Defendants collected and maintained, and for failing to provide adequate notice to Plaintiffs and other Class Members that their information was likely accessed by an unknown third party and precisely what specific type of information was accessed.

9.      On information and belief, Defendants maintained Class Members' Private Information in a reckless and negligent manner. In particular, the Private Information was maintained on Defendants' computer system and network in a condition vulnerable to cyberattack. The mechanism of the Data Breach and potential for improper disclosure of Plaintiffs' and Class Members' Personal Information was a known risk to Defendants and thus Defendants was on notice that failing to take steps necessary to secure the Personal Information from those risks left that information in a dangerous condition.

10.     Because of the Data Breach, Plaintiffs and Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value

of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

11.    By obtaining, collecting, using, and profiting from the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendants admitted the unencrypted Private Information was impacted during the Data Breach.

12.    The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure. Indeed, on February 2, 2024, "Lockbit," a known cybercriminal hacker group[4], posted on the dark web that it had hacked 400 Gigabytes of data from Manitou, boasting it had "Clients (client database [sic] with addresses, telephone numbers, information on payments…Employees (SSN lists, residential addresses, phone, email, DOB, contracts, salary information, 401(k) forms, and other confidential documents…[5]"

13.    This Private Information was compromised because of Defendants' negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiffs and Class Members. In addition to Defendants' failure to prevent the Data Breach, after discovering the breach, Defendants has yet to protect affected individuals.

14.    Until recently, Plaintiffs and Class Members had no idea their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their lifetimes.

---

[4] Bogdan Pătru, *Lockbit Targets French Manitou Group*, PRIVACY AFFAIRS (March 16, 2024), https://www.privacyaffairs.com/lockbit-targets-french-manitou-group; @FalconFeeds.io, TWITTER (X) (February 3, 2024, 1:00 AM), HTTPS://X.COM/FALCONFEEDSIO/STATUS/1753674681146626432.
[5] A screen shot of Lockbit's darkweb post is attached as **Exhibit A**.

15. Plaintiffs bring this action on behalf of all persons whose Private Information was compromised because of Defendants' failure to: (i) adequately protect the Private Information of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

16. Plaintiffs and Class Members have suffered injury because of Defendants' conduct. These injuries include:

    (i)    lost or diminished value of Private Information;

    (ii)    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

    (iii)    lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, lost time; and

    (iv)    the continued and exacerbated to their Private Information which:

        a.    remains unencrypted and available for unauthorized third parties to access and abuse; and

        b.    may remain backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

17. Defendants disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiffs and Class Members was safeguarded. Defendants also disregarded their rights by failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures for the encryption of data, even for internal use.

18. Because of the Data Breach, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party.

Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

19.    Plaintiff Patrick Ernster is a Citizen of Yankton, South Dakota and intends to remain there throughout this litigation. He was an employee of Manitou, where Defendants acquired his PII.

20.    Plaintiff Ramsey Hofius is a Citizen of Madison, South Dakota and intends to remain there throughout this litigation. He was an employee of Manitou, where Defendants acquired his PII.

21.    Plaintiff Trevar Black is a Citizen of Pennsylvania, residing in Quakertown, and intends to remain there throughout this litigation. He was an employee of Manitou, where Defendants acquired his PII.

22.    Defendant Manitou Equipment America, LLC is located at 1 Gehl Way, West Bend, WI 53095-3463. Its registered agent is Sara Flaherty, located at 1 Gehl Way, West Bend, WI 53095-3463.

23.    Defendant Manitou North America, LLC is located at 1 Gehl Way, West Bend, WI 53095-3463. Its registered agent is Sara Flaherty, located at 1 Gehl Way, West Bend, WI 53095-3463.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members was stated by Defendants as 11,414 individuals,[6]

---

[6]    Office of the Maine Attorney General, *Data Breach Notifications* (June 28, 2024), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/953c8eb0-d01e-414c-8588-238d7495d90a.html (last accessed July 10, 2024).

many of whom have different citizenship from Defendants, including Plaintiffs. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

25.    This Court has personal jurisdiction over Defendants because they operate and are headquartered in this District and conduct substantial business in this District.

26.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(l) because a substantial part of the events giving rise to this action occurred in this District. Defendants are also based in this District, maintains Plaintiffs' and Class Members' Private Information in this District, and has caused harm to Plaintiffs and Class Members from and/or in this District.

## FACTUAL ALLEGATIONS

### *Defendant Collected and Stored the PII of Plaintiff and the Class*

27.    As part of its business, Manitou receives and maintains the PII of thousands of its current and former employees.

28.    In collecting and maintaining the PII, Manitou agreed it would safeguard the data in accordance with its internal policies, state law, and federal law.

29.    Under state and federal law, businesses like Manitou have duties to protect its current and former employees' PII and to notify them about breaches.

### *The Data Breach*

30.    On December 8, 2023, Defendants claim an unauthorized party accessed Defendants' computer networks. Ex. B.

31.    Defendants confirmed an unauthorized party had access to Plaintiffs' and Class Members' Private Information, stating that on December 24, 2023, it "became aware that an unauthorized third party had gained access to some of Manitou's systems on December 8, 2023."

32.    Thus, upon information and belief, Defendants' Data Breach began on December 8, 2023—but Defendant was unable to detect the Data Breach until December 24, 2023.

33.     To make matters worse, Manitou already admitted that its systems were not only breached, but also "personal information was accessed and/or acquired by the third party during the incident."

34.     The Private Information accessed and exfiltrated was likely not encrypted because if properly encrypted, then cybercriminals would not have acquired and accessed Plaintiffs' and Class Members' Private Information.

35.     Defendants had obligations under contract, industry standards, and common law to reasonably protect and safeguard Plaintiffs' and Class Members' Private Information from unauthorized access.

36.     Defendants agreed to and undertook legal duties to maintain the protected Private Information entrusted to Defendants by Plaintiffs and Class Members safely, confidentially, and in compliance with all applicable laws.

37.     Because of Defendant's Data Breach, Plaintiffs' and Class members' PII was compromised, including but not limited to their:

      a.  Name;

      b.  address;

      c.  Social Security number;

      d.  driver's license number;

      e.  government issued ID number (e.g. passport, state ID card);

      f.  financial information (e.g. account number, credit or debit card number);

      g.  health insurance information; and,

      h.  date of birth.[7]

---

[7] *Data Security Breach Reports*, TEXAS ATTY GEN

38.    In total, Manitou injured at least 11,414 persons—via the exposure of their PII—in the Data Breach. Upon information and belief, these 11,414 persons include its current and former employees.[8]

39.    And yet, Manitou waited until June 28, 2024, before it began notifying the class—over six months after the Data Breach was discovered. Ex. B.

40.    Thus, Manitou kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

41.    And when Manitou did notify Plaintiffs and the Class of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, encouraging Plaintiffs and the Class to "remain vigilant by reviewing account statements and monitoring your credit report for unauthorized activity, especially activity that may indicate fraud and identity theft." Ex. B.

42.    Defendants further acknowledged the threat posed by the Data Breach by informing victims that they "have the right to file a police report if [they] ever experience identity fraud" and providing victims with resources on how to obtain copies of their credit reports, set fraud alerts, and place a security freeze on their credit reports. Ex. B.

43.    Manitou failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendants caused widespread injury and monetary damages.

44.    Since the breach, Defendants have "taken additional actions to improve and

---

https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited July 8, 2024).
[8] *Data Breach Notifications*, MAINE ATTY GEN
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/953c8eb0-d01e-414c-8588-238d7495d90a.html (last visited July 8, 2024).

monitor the security of [its] systems." Ex. B.

45.    But this is too little too late. Simply put, these additional actions—which Defendants now recognizes as necessary—should have been implemented before the Data Breach.

46.    Moreover, Defendants have not explained what "additional actions" actually entails. Thus, upon information and belief, Plaintiffs' and Class Members' PII remains unsecure.

47.    By obtaining, collecting, using, and profiting from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

48.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

49.    Plaintiffs and Class Members relied on Defendants to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosure of this Private Information.

50.    Plaintiffs and Class Members directly or indirectly entrusted Defendants with sensitive and confidential information, including their Private Information, which includes Social Security numbers, information that is static, does not change, and can be used to commit myriad financial crimes.

51.    Defendants had a duty to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties.

52.    Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiffs and Class Members, causing the exposure of Private Information.

53.    Because Defendants failed to properly protect safeguard Plaintiffs' and Class

10

Members' Private Information, an unauthorized third party was able to access Defendants' network, and access Plaintiffs' and Class Members' Private Information stored on Defendants' systems.

### *LockBit claims credit—and threatens to publish PII*

54.     Worryingly, the cybercriminals that obtained Plaintiffs' and Class members' PII appear to be the notorious Russian cybercriminal group "LockBit."[9]

55.     On February 2, 2024, LockBit claimed credit for the Data Breach on its Dark Web website.[10]

56.     Thereafter, LockBit indicated that it would publish the stolen PII on February 4, 2024, unless a ransom was paid.[11]

57.     Thus, it appears Plaintiffs' and Class members' PII was already published on the Dark Web—given that the February 2024 deadline has long since passed.

58.     Arising in Russia during early 2020, "LockBit" is now "the most deployed ransomware variant across the world and continues to be prolific in 2023.[12]

59.     Thus, the Cybersecurity and Infrastructure Security Agency (CISA), Federal Bureau of Investigation (FBI), the Multi-State Information Sharing and Analysis Center (MSISAC) have warned that:

> a.     "LockBit affiliates have employed double extortion by first encrypting victim data and then exfiltrating that data while threatening to post that stolen data on leak sites.[13]

---

[9] *See* fn 4.
[10] Exhibit A; @Comparitech, TWITTER (X) (July 1, 2024, 3:40 AM), https://x.com/Comparitech/status/1807695814736666998/photo/1.
[11] *See id*.
[12] *Cybersecurity Advisory*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (June 14, 2023) https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-165a.
[13] *Id.*

      b.  "Up to the Q1 2023, a total of 1,653 alleged victims were observed [i.e.,

published] on LockBit leak sites."[14]

60.    And Reuters reports that:

      a.  "On the dark web, Lockbit's blog displays an ever-growing gallery of victim

organisations that is updated nearly daily."[15]

      b.  "Next to their names are digital clocks showing the number of days left to the

deadline given to each organisation to provide ransom payment, failing which,

the gang publishes the sensitive data it has collected."[16]

61.    And as the Harvard Business Review notes, such "[c]ybercriminals frequently use

the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have

gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[17]

62.    Thus, on information and belief, Plaintiffs' and the Class's stolen PII has

already been published—or will be published imminently—by cybercriminals on the Dark Web.

### Plaintiffs' Experience

63.    Plaintiff Ramsey Hofius is a Citizen of Madison, South Dakota and was an

employee of Manitou, having worked for Manitou off and on since 2016. Hofius last worked for

Manitou from 2021-2023 as a paint technician.

64.    Plaintiff Patrick Ernster is a Citizen of Yankton, South Dakota and was an

employee of Manitou, having worked for Manitou in 2014-2015.

---

[14] *Id.*

[15] Zeba Siddiqui & James Pearson, *Explainer: What is Lockbit? The digital extortion gang on a cybercrime spree*, REUTERS (Nov. 10, 2023) https://www.reuters.com/technology/cybersecurity/what-is-lockbit-digital-extortion-gangcybercrime-spree-2023-11-10/.

[16] *Id.*

[17] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-forsale-on-the-dark-web-should-you-buy-it-back.

65.    Plaintiff Trevar Black is a former employee of Defendant, having worked for the Manitou manufacturing plant in Madison, South Dakota for at least six months in 2017.

66.    As a condition of their employment, Plaintiffs were required to provide Defendants with their PII. Defendants used that PII to facilitate their business.

67.    Plaintiffs reasonably understood that a portion of the funds derived from their employment would be used to pay for adequate cybersecurity and protection of PII.

68.    Plaintiff Ernster received a Notice of Data Breach dated June 28, 2024.

69.    Plaintiff Hofius received a Notice of Data Breach dated June 28, 2024.

70.    Plaintiff Black received a Notice of Data Breach dated June 28, 2024.

71.    Plaintiff Ernster experienced a major increase in the number of spam phone calls and emails post-Data Breach., indicating his information was available to unauthorized users, including cybercriminals.

72.    Plaintiff Hofius was notified by Credit Karma that his information had been leaked and was now available on the dark web after the Data Breach.

73.    Plaintiff Hofius experienced several fraudulent sign-ins to his social media accounts from unauthorized users outside the United States.

74.    Plaintiff Hofius has further experienced a noticeable increase in spam calls and emails post-Data Breach.

75.    All of Plaintiff Hofius's experiences indicate his Private Information is now available to unauthorized users, such as cybercriminals.

76.    In the aftermath of the Data Breach, Plaintiff Black has suffered from a spike in spam and scam emails, indicating that his information is already in the hands of cybercriminals.

77.    Additionally, following the Data Breach, Plaintiff Black has experienced multiple fraudulent sign-ins on his Microsoft email account from unauthorized users located across the

world.

78.     Further, earlier this year, Plaintiff Black was notified by Credit Karma that his information has been found on the dark web, indicating that the Data Breach caused cybercriminals to leak his information on the dark web.

79.     Plaintiffs entrusted Private Information to Defendants to be employed by Manitou.

80.     Plaintiffs' Private Information was within the possession and control of Defendants at the time of the Data Breach.

81.     Plaintiffs provided their Private Information to Defendants and trusted that the information would be safeguarded according to internal policies and state and federal law.

82.     Plaintiffs are very careful about sharing their sensitive Private Information. Plaintiffs have never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

83.     Plaintiffs store any documents containing their sensitive Private Information in a safe and secure location or destroy the documents. Moreover, Plaintiffs diligently choose unique usernames and passwords for their various online accounts.

84.     Due to Manitou's Data Breach, Plaintiffs have suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiffs' injuries are precisely the type of injuries that the law contemplates and addresses.

85.     Because of the Data Breach, Plaintiffs have spent and will continue to spend time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring their accounts to ensure no fraudulent activity has occurred and set up a credit alerts. This time has been lost forever and cannot be recaptured. And this time was spent at Defendants' direction by way of the Data Breach notice

14

where Defendants recommended that Plaintiffs mitigate their damages by, among other things, monitoring their accounts for fraudulent activity.

86.    Even with the best response, the harm caused to Plaintiffs cannot be undone.

87.    Plaintiffs suffered actual injury in the form of damages to and diminution in the value of Plaintiffs' Private Information—a form of intangible property that Plaintiffs entrusted to Defendants, which was compromised in and because of the Data Breach. Plaintiffs suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of their privacy.

88.    Plaintiffs have suffered imminent and impending injury arising from the exacerbated of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of unauthorized third parties and possibly criminals.

89.    Plaintiffs have a continuing interest in ensuring that Plaintiffs' Private Information, which, upon information and belief, remain backed up in Defendants' possession, is protected, and safeguarded from future breaches.

***The Data Breach was Foreseeable.***

90.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[18]

91.    Defendants' data security obligations were particularly important given the global rise in cyberattacks and/or data breaches preceding the date of the breach. In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[19]

---

[18] FBI (Federal Bureau of Investigation), *How to Protect Your Networks from **RANSOMWARE***, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed Aug. 23, 2021).
[19] ITRC (Identity Theft Resource Center), *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited December 24, 2023).

92.     Considering recent high profile cybersecurity incidents across the country, Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

93.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so that they are aware of, and prepared for, a potential attack.[20]

94.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

*Value of Private Information*

95.     The Private Information of individuals remains of high value to criminals, as shown by the prices they will pay through the dark web. Many sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[21] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[22] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[23]

96.     For these reasons, the information compromised in the Data Breach is far more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

---

[20] FBI (Federal Bureau of Investigation), *Secret Service Warn of Targeted*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbisecret-service-wam-of-targeted-ransomware (last accessed May 30, 2024).
[21] Digital Trends, *Your personal data is for sale on the dark web. Here's how much it costs* (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed May 30, 2024).
[22] Experian, *Here's How Much Your Personal Information Is Selling for on the Dark Web* (Dec. 6, 2017), *available at* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed May 30, 2024).
[23] VPNOverview, *In the Dark* (2019), *available at* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark (last accessed Oct. 27, 2021).

97.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information... [is] worth more than 10x on the black market."[24]

98.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, financial services, and housing or even give false information to police.

99.     The fraudulent activity resulting from the Data Breach may not come to light for years.

100.    Drug manufacturers, device manufacturers, pharmacies, hospitals, and financial service providers often purchase PII on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PII to adjust their insureds' insurance premiums.

101.    According to account monitoring company LogDog, PII sells for $50 and up on the Dark Web.[25]

102.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

---

[24] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 1Ox Price of Stolen Credit Card Numbers,* IT World (Feb. 6, 2015), *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Aug. 23, 2021).
[25] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals,* Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last accessed July 20, 2021).
[26] GAO (General Accountability Office), *Report to Congressional Requesters,* at 29 (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Aug. 23, 2021).

103.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members and the foreseeable consequences that would occur if Defendants' data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members because of a breach.

104.    Because Plaintiffs and Class Members PII has been posted and, on information and belief, put up for sale on dark web, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

105.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' network, amounting to potentially millions of individuals' detailed, personal information and thus the significant number of individuals who would be harmed by the exposure of the unencrypted data.

106.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiffs and class Members.

107.    As a condition of providing employment, Defendants required that their employees entrust them with Private Information. Upon information and belief, Defendants also obtained and held the Private Information of their customers—which was also accessed during the Data Breach.

108.    By obtaining, collecting, using, and profiting from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

109.    Plaintiffs and the Class Members have taken reasonable steps to maintain the

confidentiality of their Private Information.

110.    Plaintiffs and the Class Members relied on Defendants to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business purposes, and to prevent the unauthorized disclosures of the Private Information.

***Defendants acquired, collected, and stored the Private Information of Plaintiffs and Class Members accessed during the Data Breach***

111.    Defendants acquired, collected, and stored the Private Information of Plaintiffs and Class Members.

112.    By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII from disclosure.

113.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Defendants Failed to Properly Protect Plaintiffs' and Class Members' Private Information***

114.    Defendants could have prevented this Data Breach by properly securing and encrypting the systems containing the Private Information of Plaintiffs and Class Members. Alternatively, Defendants could have destroyed the data, especially for individuals with whom they had not had a relationship for some time.

115.    Defendants' negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendants to protect and secure sensitive data they possess.

116.    Despite the prevalence of public announcements of data breach and data security

compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

117.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

118.    The ramifications of Defendants' failure to keep secure the PII of Plaintiffs and Class Members are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

119.    To prevent and detect unauthorized cyber-attacks, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and Domain Keys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no

users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls-including file, directory, and network share permissions-with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[27]

120.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks....

- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) ....

---

[27] *Id.* at 3-4.

- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it....

- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters-and keep them updated-to reduce malicious network traffic.[28]

121.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

***Secure internet-facing assets***

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

***Thoroughly investigate and remediate alerts***

- Prioritize and treat commodity malware infections as potential full compromise;

***Include IT Pros in security discussions***

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

---

[28] *See* Security Tip (ST19-001) Protecting Against Ransomware (released Apr. 11, 2019, revised Sept. 2, 2021), *available at* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last accessed July 9, 2024).

***Build credential hygiene***

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

***Apply principle of least-privilege***

- Monitor for adversarial activities;
- Hunt for brute force attempts;
- Monitor for cleanup of Event Logs;
- Analyze logon events;

***Harden infrastructure***

- Use Windows Defender Firewall;
- Enable tamper protection;
- Enable cloud-delivered protection; and
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[29]

122.    Given that Defendants were storing the PII of Plaintiffs and Class Members, Defendants could and should have implemented all the above measures to prevent and detect cyberattacks.

123.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII of Plaintiffs and Class Members.

124.    As the result of computer systems needing security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

125.    Because Defendants failed to properly protect safeguard Plaintiffs' and Class Members' Private Information, an unauthorized third party was able to access Defendants'

---

[29] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed Aug. 23, 2021).

networks, access Defendants' database and system configuration files, and remove Plaintiffs' and Class Members' Private Information from Defendants' network.

126.    Given that Defendants were storing the PII of Plaintiffs and Class Members, Defendants could and should have implemented all the above measures to prevent and detect cyberattacks.

127.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII of Plaintiffs and Class Members.

128.    As the result of computer systems needing security upgrades, inadequate procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

### Defendants violated FTC Guidelines

129.    The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should influence all business decision-making.

130.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the private information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[30]

---

[30] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at*

131.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

132.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

133.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect private data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions clarify the measures businesses take to meet their data security obligations.

134.    Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

135.    Defendants were always fully aware of its obligation to protect the PII of Plaintiffs and Class members. Defendants were also aware of the significant repercussions that would result from its failure to do so.

---

https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf   (last accessed July 9, 2024).

*Defendants violated Industry Standards*

136.   As shown above, experts studying cyber security routinely identify professional service companies as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

137.   Several best practices have been identified that at a minimum should be implemented by businesses like Defendants, including, but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

138.   Other best cybersecurity practices that are standard in the professional services industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

139.   Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-I, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-I, PR.DS-1, PR.DS-5, PR.PT-I**,** PR.PT-3, DE.CM-I, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

140.   The foregoing frameworks are existing and applicable industry standards in the professional services industry, and Defendants violated these accepted standards, thereby opening the door to and causing the Data Breach.

*Defendants' Negligent Acts and Breaches*

141.    Defendants breached their obligations to Plaintiffs and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.  Failing to maintain adequate data security systems to reduce the risk of data breaches;

b.  Failing to adequately protect the Personal Information of Plaintiffs and the Class;

c.  Failing to properly monitor their own data security systems for existing intrusions;

d.  Failing to train employees in the proper handling of emails containing how the cyberattackers were able to first access Defendants' networks, and to and maintain adequate email security practices;

e.  Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f.  Failing to ensure the confidentiality and integrity of electronic PII they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(l);

g.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(l)(i);

h.  Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(l)(ii)(D);

j.  Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PII in violation of 45 C.F.R. § 164.306(a)(2);

k.  Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

l.  Failing to adhere to industry standards for cybersecurity.

142.    Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Personal Information by allowing/providing unsecured and unencrypted Personal Information to Defendants which in turn allowed cyberthieves to access their IT systems. This is due to Defendants' outdated antivirus and malware protection software needing security updating, their inadequate procedures for handling phishing emails or emails containing viruses or other

malignant computer code, and their other failures to maintain their computer networks in configuration that would protect against cyberattacks like the one here.

143.    Accordingly, as outlined below, Plaintiffs and Class Members now face an increased risk of fraud and identity theft.

**Because of Defendants' failure to safeguard Private Information, Plaintiffs and the Class Members have experienced substantial harm and will face significant risk of continued identity theft.**

144.    Plaintiffs and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendants.

145.    The ramifications of Defendants' failure to keep Plaintiffs' and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

146.    Because of Defendants' failures to prevent-and to timely detect-the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a.   The loss of the opportunity to control how their PII is used;

   b.   The diminution in value of their PII;

   c.   The compromise and continuing publication of their PII;

   d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Delay in receipt of tax refund monies;

    g.   Unauthorized use of stolen PII; and

    h.   The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the PII in its possession.

147.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

148.    The value of Plaintiffs' and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

149.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to milk that information for cash.

150.    One such example of criminals using PII for profit is the development of "Fullz" packages.

151.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

152.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and

sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

153.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

154.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendants did not rapidly report to Plaintiffs and the Class that their PII had been stolen.

155.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

156.    In addition to out-of-pocket expenses that can exceed thousands of dollars, and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

157.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiffs and the Class will need to be remain vigilant against unauthorized data use for years or even decades to come.

158.    The Federal Trade Commission ("FTC'') has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[31]

159.    The FTC has also issued Many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

(1) encrypting information stored on computer networks;

(2) retaining payment card information only as long as necessary;

(3) properly disposing of personal information that is no longer needed;

(4) limiting administrative access to business systems;

(5) using industry-tested and accepted methods for securing data;

(6) monitoring activity on networks to uncover unapproved activity;

(7) verifying that privacy and security features function properly;

(8) testing for common vulnerabilities; and

(9) updating and patching third-party software.

160.    According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[32] The FTC treats the failure to employ reasonable and appropriate measures to protect against

---

[31] [Prior] FTC Commissioner Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), *available at* http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited July 9, 2024).
[32] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual- library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited October 10, 2022).

unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

161. Defendants' failure to properly notify Plaintiffs and Class Members of the Data Breach exacerbated Plaintiffs' and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### *Plaintiffs' and Class Members' Damages*

162. To date, Defendants have done little to provide Plaintiffs and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendants have not offered identity monitoring services, despite Plaintiffs and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

163. The lack of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud. What's more, Defendants place the burden on Plaintiffs and Class Members by requiring them to spend time signing up for that service rather than automatically enrolling all victims of this Data Breach.

164. Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

165. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

166. Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses

such as loans opened in their names, financial or medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

167.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

168.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

169.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

170.    Defendants provided no compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' Private Information.

171.    Plaintiffs and Class Members have been damaged by the compromise of their Personal Information in the cyber-attack. Moreover, Defendants' delay in noticing affected persons of the theft of their Private Information prevented early mitigation efforts and compounded the harm.

172.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.  Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.  Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring Social Security number; financial, medical, and bank accounts; and credit reports for unauthorized activity for years to come.

173.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Personal Information, which is believed to remain in the possession of Defendants, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing Personal Information is inaccessible online and that access to such data is password protected.

## CLASS ALLEGATIONS

174.    Plaintiffs brings this nationwide class action on behalf of himself and on behalf of others similarly situated under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

175.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> **All individuals residing in the United States whose PII was compromised in the Data Breach discovered by Manitou in December 2023, including all those individuals who received notice of the breach.**

176.    Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which any Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and all judges assigned to hear any aspect of this

litigation, as well as their immediate family members.

177.    Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

178.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(l): Class Members are so Many that joinder of all members is impracticable. Upon information and belief, there exceed 10,000 individuals whose Private Information may have been improperly accessed in the Data Breach, and each Class is apparently identifiable within Defendants' records.

179.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.    Whether and to what extent Defendants had a duty to protect the Private Information of Plaintiffs and Class Members;

    b.    Whether Defendants had duties not to disclose the Private Information of Plaintiffs and Class Members to unauthorized third parties;

    c.    Whether Defendants had duties not to use the Private Information of Plaintiffs and Class Members for non-business purposes;

    d.    Whether Defendants failed to adequately safeguard the Private Information of Plaintiffs and Class Members;

    e.    When Defendants learned of the Data Breach;

    f.    Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

    g.    Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

    h.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.    Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiffs and Class Members;

k.  Whether Defendants violated the consumer protection statutes invoked herein;

l.  Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages because of Defendants' wrongful conduct;

m.  Whether Plaintiffs and Class Members are entitled to restitution because of Defendants' wrongful conduct; and

n.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced because of the Data Breach.

180.    Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised because of the Data Breach, because of Defendants' misfeasance.

181.    Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged here apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct toward the Class as a whole, not on facts or law applicable only to Plaintiffs.

182.    Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

183.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged here; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of modest claims by certain Class Members, who could not individually afford to litigate a complex claim against companies, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

184.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

185.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

186.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

187.    Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the Private Information of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

188.    And Defendants have acted or refused to act on grounds generally applicable to the Classes and thus final injunctive or corresponding declaratory relief for the Class Members is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

189.    Likewise, issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

    a.  Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    b.  Whether Defendants breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    c.  Whether Defendants failed to meet own policies and applicable laws, regulations, and industry standards relating to data security;

    d.  Whether an implied contract existed between Defendants on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

    e.  Whether Defendants breached the implied contract;

    f.  Whether Defendants adequately and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

    g.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h.  Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing

to safeguard the Private Information of Plaintiffs and Class Members; and

i.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief because of Defendants' wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiffs and the Putative Rule 23 Class)

190.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

191.    Plaintiffs and the Class entrusted Defendants with their Private Information.

192.    Plaintiffs and the Class entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their PII for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

193.    Defendants know about the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if the Private Information were wrongfully disclosed.

194.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

195.    Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that the Private Information of Plaintiffs and the Class

Members in Defendants' possession was adequately secured and protected.

196.    Defendants also had a duty to exercise appropriate clearinghouse practices to remove Private Information they were no longer required to retain under regulations.

197.    Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiffs and the Class.

198.    Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendants with their confidential Private Information, a necessary part of obtaining services from Defendants.

199.    Defendants were subject to an "independent duty," untethered to any contract between Defendants and Plaintiffs or the Class Members.

200.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly given Defendants' inadequate security practices.

201.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiffs and the Class, the importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendants' systems.

202.    Defendants' own conduct created a foreseeable risk of harm. to Plaintiffs and the Class. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach asset forth here. Defendants' misconduct also included their decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiffs and the Class, including basic encryption techniques freely available to Defendants.

203.    Plaintiffs and the Class had no ability to protect their Private Information that was

in, and possibly remains in, Defendants' possession.

204.    Defendants were able to protect against the harm suffered by Plaintiffs and the Class because of the Data Breach.

205.    Defendants had and continue to have a duty to adequately disclose that the Private Information of Plaintiffs and the Class within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

206.    Defendants had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiffs and the Class.

207.    Defendants admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

208.    Defendants, through actions and/or omissions, unlawfully breached their duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiffs and the Class during the time the Private Information was within Defendants' possession or control.

209.    Defendants improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

210.    Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiffs and the Class in the face of increased risk of theft.

211.    Defendants, through actions and/or omissions, unlawfully breached their duty to

Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

212.    Defendants breached their duty to exercise appropriate clearinghouse practices by failing to remove Private Information they were no longer required to retain under regulations.

213.    Defendants, through actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiffs and the Class the existence and scope of the Data Breach.

214.    But for Defendants' wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, the Private Information of Plaintiffs and the Class would not have been compromised.

215.    There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiffs and the Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Class. The Private Information of Plaintiffs and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

216.    Additionally, Section 5 of the FTC Act prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

217.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as detailed herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII they

42

obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

218.    Defendants' violation of Section 5 of the FTC Act constitutes negligence *per se.*

219.    Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

220.    The harm attributable to the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

221.    As a direct and proximate result of Defendants' negligence and negligence *per se,* Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information of Plaintiffs and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the

lives of Plaintiffs and the Class.

222.    As a direct and proximate result of Defendants' negligence and negligence *per se,* Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

223.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

224.    Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se,* Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

225.    As a direct and proximate result of Defendants' negligence and negligence *per se,* Plaintiffs and the Class have a right to recover actual, consequential, and nominal damages.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiffs and the Putative Rule 23 Class)

226.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

227.    Plaintiffs and the Class entrusted their Private Information to Defendants. In so doing, Plaintiffs and the Class entered implied contracts with Defendants by which Defendants agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

228.    In their privacy policies, Defendants represented that they would not disclose

44

Plaintiffs and Class Members' Private Information to unauthorized third parties.

20S. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendants.

206.    Defendants breached the implied contracts with Plaintiffs and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiffs and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their personal information was compromised because of the Data Breach.

207.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

208.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

209.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiffs and the Class have a right to recover actual, consequential, and nominal damages.

## COUNT III
## NEGLIGENCE PER SE
### (On behalf of Plaintiffs and the Putative Rule 23 Class)

210.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth

here.

211.    Pursuant to Federal Trade Commission, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

212.    Defendants breached their duties to Plaintiffs and Class Members under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

213.    Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

214.    But for Defendants' wrongful and negligent breaches of their duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured.

215.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendants' breaches of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

216.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered an injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT IV
## BREACH OF FIDUCIARY DUY
### (On behalf of Plaintiffs and the Putative Rule 23 Class)

217.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

218.    In light of the special relationship between Defendants and Plaintiffs and Class

Members, by which Defendants became guardians of Plaintiffs and Class Members' Private Information, Defendants became a fiduciary by their undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs and Class Members' Private Information; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and do store.

219.    Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendants' relationship with their employees and customers, in particular, to keep secure their Private Information.

220.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

221.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to encrypt or otherwise protect the integrity of the systems containing Plaintiffs and Class Members' Private Information.

222.    Defendants breached their fiduciary duties owed to Plaintiffs and Class Members by failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach.

223.    Defendants breached their fiduciary duties to Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

224.    As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated

with effort expended and the loss of productivity addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the rest of the lives of Plaintiffs and Class Members; and (vii) the diminished value of Defendants' services they received.

225.     As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT V**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Putative Rule 23 Class)**

226.     Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

227.     Plaintiffs and Class Members conferred a monetary benefit on Defendants, by providing Defendants with their valuable Private Information.

228.     Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information.

229.     Rather than provide a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by using cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failures to provide the requisite security.

230.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

231.    Defendants acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices alleged.

232.    If Plaintiffs and Class Members knew that Defendants had not secured their PII, they would not have agreed to provide their PII to Defendants.

233.    Plaintiffs and Class Members have no adequate remedy at law.

234.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in its continued possession and (vii) future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiffs and Class Members.

235.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class

49

Members have suffered and will continue to suffer other forms of injury and/or harm.

236.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that it unjustly received from them.

### COUNT VI
### INVASION OF PRIVACY
#### (On behalf of Plaintiffs and the Putative Rule 23 Class)

237.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

238.    The State of Wisconsin recognizes the right of privacy as codified by Wis. Stat. § 995.50.

239.    Notably, § 995.50(2)(am) defines "invasion of privacy" as including:

   a.    "Intrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private[.]"

   b.    "Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed."

240.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties. Defendant owed a duty to its current and former employees, including Plaintiff and the Class, to keep this information confidential.

241.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class members' PII is highly offensive to a reasonable person.

242.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and

protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

243.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

244.    Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

245.    Defendants acted with a knowing state of mind when they failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

246.    Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

247.    As a proximate result of Defendants' acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages (as detailed *supra*).

248.    And, on information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

249.    Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their PII is still maintained by Defendants with their inadequate cybersecurity system and policies.

250.    Plaintiffs and the Class have no adequate remedy at law for the injuries relating to

Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII of Plaintiffs and the Class.

251.    In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class members, also seek compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## COUNT VII
### VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
### Wis. Stat. §§ 100.18, et seq.
### (On behalf of Plaintiffs and the Putative Rule 23 Class)

252.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

253.    The Wisconsin Deceptive Trade Practices Act ("WDTPA") prohibits a person or firm with intent to offer anything for sale or hire from making any representations to "the public" that are "untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

254.    Here, Defendants violated WDTPA because (1) Defendant represented (affirmatively and/or by omission) to the public that it would keep sensitive information confidential—as to induce the public to disclose such information, (2) such representations were untrue, deceptive, and/or misleading because Defendants used inadequate data security systems, and (3) such representations caused pecuniary losses as detailed infra.

255.    Furthermore, Defendants' WDTPA violations are evidenced by Defendant's various failures which include, *inter alia*:

> a.   failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' PII, which was a direct and proximate cause of the Data Breach;

> b.   failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

> c.   failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PII, including

53

duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, et seq., which was a direct and proximate cause of the Data Breach;

d.   omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII; and,

e.   omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, et seq.

256.   Defendants' omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII.

257.   Defendants intended to mislead Plaintiffs and Class members and induce them to rely on their omissions.

258.   Had Defendants disclosed to Plaintiffs and Class members that their data systems were not secure—and thus vulnerable to attack—Defendants would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendants accepted the PII that Plaintiffs and Class members entrusted to them while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and Class members acted reasonably in relying on Defendants' omissions, the truth of which they could not have discovered through reasonable investigation.

259.    Defendants acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiffs' and Class members' rights.

260.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

261.    And, on information and belief, Plaintiffs PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

262.    Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law.

## COUNT VIII
## DECLARATORY AND INJUNCTIVE RELIEF
### (On behalf of Plaintiffs and the Putative Rule 23 Class)

263.    Plaintiffs and the Class repeat and re-allege every allegation as if fully set forth here.

264.    Plaintiffs pursue this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

265.    Defendants owe a duty of care to Plaintiffs and Class Members that require them to adequately secure Plaintiffs' and Class members' Private Information.

266.    Defendants failed to fulfill their duties of care to safeguard Plaintiffs' and Class Members' Private Information.

267.    As described above, actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to

Plaintiffs and Class Members. Further, Plaintiffs and Class members are at risk of additional or further harm due to the exposure of their Private Information and Defendants' failures to address the security failings that led to such exposure.

268. There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the breach to meet Defendants' contractual obligations and legal duties.

269. Plaintiffs, therefore, seek a declaration (1) that Defendants' existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

   a. Ordering that Defendants engage internal security personnel to conduct testing, including audits on Defendants' systems, periodically, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

   b. Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

   c. Ordering that Defendants audit, test, and train their security personnel and employees regarding any new or modified data security policies and procedures;

   d. Ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, any Private Information unnecessary for their provision of services or employee's employment;

   e. Ordering that Defendants conduct regular database scanning and security checks; and

   f. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including, but not limited to, personally identifiable information.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and Class Members, requests

judgment against Defendants and that the Court grant the following:

    a.   For an Order certifying the Class, and appointing Plaintiffs and their Counsel to represent the Class;

    b.   For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of the PII of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

    c.   For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including, but not limited to, an order:

        i.   prohibiting Defendants from engaging in the wrongful and unlawful acts described here;

        ii.   requiring Defendants to protect, including through encryption, all data collected through the course of their businesses in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

        iii.   requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

        iv.   requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

        v.   prohibiting Defendants from maintaining the PII of Plaintiffs and Class Members on cloud-based databases;

        vi.   requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

        vii.   requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

        viii.   requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

        ix.   requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is

compromised, hackers cannot gain access to other portions of Defendants' systems;

x.    requiring Defendants to conduct regular database scanning and securing checks;

xi.    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii.    requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring Defendants to meaningfully educate all Class Members about the threats that they face because of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

d.    For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

e.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.   For prejudgment interest on all amounts awarded; and

g.   Any other relief that this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand that this matter be tried before a jury.

Date: September 9, 2024

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**

Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery*
Texas Bar No. 24052214
leigh@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
 (888) 350-3931
(*pro hac vice* application forthcoming)


And

Samuel J. Strauss (SBN: 1113942)
Cassandra P. Miller*
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Ste 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
cmiller@straussborrelli.com
(*pro hac vice* application forthcoming)


**ATTORNEYS FOR PLAINTIFFS AND
THOSE SIMILARLY SITUATED**

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2024, I electronically filed the foregoing paper with the Clerk

of the Court using the E-Filing System which will send notification of such filing to all counsel of record.


*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey