**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

PATRICK ERNSTER, RAMSEY
HOFIUS and TREVAR BLACK,
individually and on behalf of all others
similarly situated;

                Plaintiffs,

v.

MANITOU EQUIPMENT AMERICA, LLC
and MANITOU NORTH AMERICA, LLC,

                Defendants.

Case No.: 3:24-CV-462-WMC
Honorable William M. Conley

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     RELEVANT BACKGROUND ................................................................................ 2

  A.    Manitou ............................................................................................................ 2

  B.    The Security Incident ....................................................................................... 3

  C.    The Class Action Complaint ............................................................................ 3

  D.    History of Negotiations .................................................................................... 4

III.    THE PROPOSED SETTLEMENT ......................................................................... 4

  A.    The Settlement Class ........................................................................................ 4

  B.    The Settlement .................................................................................................. 5

    1.  Cash Benefits ................................................................................................ 5

    2.  Equitable Relief ............................................................................................ 5

    3.  Release .......................................................................................................... 6

  C.    Notice and Settlement Administration .............................................................. 6

  D.    Exclusion & Objection Procedures .................................................................. 7

    1.  Requests for Exclusion ................................................................................ 7

    2.  Objections ..................................................................................................... 7

IV.     LEGAL STANDARD .............................................................................................. 8

V.      ARGUMENT ........................................................................................................... 9

  A.    The Court Should Grant Class Certification for Settlement Purposes .......................... 10

    1.  The Class is sufficiently numerous and joinder is impracticable ............................ 12

    2.  Questions of law and fact are common to the members of the Settlement Class. ..... 12

    3.  The Claims of the Plaintiffs are Typical of the Claims of Class Members .............. 13

    4.  The Class Representatives have and will continue to provide adequate representation
        for Class Members ....................................................................................... 14

    5.  The Class Satisfies the Requirements of Rule 23(b) ................................................ 15

      a.     Common questions of law and fact predominate......................................................... 15

      b.     A class action is the superior method for resolving these claims ............................ 16

B.      The Settlement Should be Approved as Fair, Reasonable and Adequate**.**................... 17

   1.     The Plaintiffs and Class Counsel Have Adequately Represented the Class ............. 19

   2.     The Settlement was Negotiated at Arms'-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion ............................................................................... 21

   3.     The Settlement Provides Substantial Relief for the Class ........................................ 22

      a.     The costs, risks, and delay of trial and appeal favor approval of the Settlement...... 23

      b.     The method of providing relief is effective ............................................................. 24

      c.     The proposed award of attorneys' fees is fair and reasonable ................................. 25

      d.     Additional agreements do not undercut the adequacy of the Settlement.................. 26

   4.     The Settlement Agreement Treats Class Members Equitably to Each Other ........... 27

C.      The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirement**s** ...................................................................................................................... 27

VI.      CONCLUSION............................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Grp. v. ACE INA Holdings, Inc.*,
2011 U.S. Dist. LEXIS 84219 *(N.D. Ill. Jul. 26, 2011)* ............................................... 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591(1997) ................................................................................. 11, 15, 16

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ....................................................................................... 15

*Antrim v. Carr*,
No. 19-cv-0396-bhl, 2023 U.S. Dist. LEXIS 221665 (E.D. Wis. Dec. 13, 2023) ................... 12

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) .................................................................... 9, 17, 19, 20

*Bauer v. Kraft Foods Global, Inc.*,
277 F.R.D. 558 (W.D. Wis. Feb. 15, 2012) ................................................................ 12

*Behrens v. Landmark Credit Union*,
17-cv-101-jdp, 2018 U.S. Dist. LEXIS 106358 (W.D. Wis. June 26, 2018) .................... 20, 21

*Benoskie v. Kerry Foods, Inc.*,
No. 19-cv-684-pp, 2020 U.S. Dist. LEXIS 177538 (E.D. Wis. Sept. 28, 2020) .................... 26

*Berglund v. Matthews Senior Hous. LLC*,
No. 21-cv-108-pp, 2023 U.S. Dist. LEXIS 185972 (E.D. Wis. Oct. 17, 2023) ..................... 8

*Bruzek v. Husky Energy Inc.*,
No. 18-cv-697 (W.D. Wis. Aug. 6, 2021) .................................................................. 18

*Bruzek v. Husky Oil Operations Ltd.*,
520 F. Supp. 3d 1079 (W.D. Wis. Feb. 19, 2021) ....................................................... 13

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ............................................................................. 12

*CV Reit, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992) ........................................................................... 14

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................................. 21

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ............................................................................... 17

*Fox v. Iowa Health System*,
  2020 WL 5678704 (W.D. Wisc. 2020) ............................................................................ 11, 12

*Grady v. de Ville Motor Hotel, Inc.*,
  415 F.2d 449 (10th Cir. 1969) ................................................................................................ 22

*Groshek v. Great Lakes Higher Educ. Corp.*,
  15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089 (W.D. Wis. Apr. 13, 2016) ........................ 20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 23

*Hapka v. CareCentrix, Inc.*,
  No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................ 16

*Hills v. Essentia Health*,
  19-cv-907-wmc, 2021 U.S. Dist. LEXIS 244810 (W.D. Wis. Dec. 23, 2021) ....................... 14

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................... 15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ....................................................................................... 17, 22

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) ................ 24

*In re Cinfed Fed. Credit Union Data Breach Litig.*,
  No. 1:23-cv-776, 2025 U.S. Dist. LEXIS 109746 (S.D. Ohio June 10, 2025) ....................... 25

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
  (Case Nos. omitted), 2025 U.S. Dist. LEXIS 23719 (S.D. Fla. Feb. 11, 2025) ........... 11, 16, 26

*In re Northfield Labs., Inc. Sec. Litig.*,
  No. 06 C 1493, 2012 U.S. Dist. LEXIS 12741 (N.D. Ill. Jan. 31, 2012) ............................... 19

*In re Onix Grp., LLC Data Breach Litig.*,
  NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024) ........... 12, 16, 26

*In re Phila. Inquirer Data Sec. Litig.*,
  NO. 24-2106-KSM, 2025 U.S. Dist. LEXIS 48541 (E.D. Pa. Mar. 18, 2025) ....................... 26

*In re Retina Grp. of Wash. Data Sec. Incident Litig.*,
  No. DKC 24-0004, 2025 U.S. Dist. LEXIS 139159 (D. Md. July 21, 2025) .......................... 11

*In re TikTok, Inc., Consumer Privacy Litigation*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................................................... 8, 9

*In re Wasserstrom Holdings, Inc. Data Breach Litig.*,
   No. 2:23-cv-2070, 2025 U.S. Dist. LEXIS 105490 (S.D. Ohio Apr. 11, 2025) ...................... 11

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................................................... 19

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ................................................................................... 17, 19

*Johnson v. Brennan*,
   No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ................................................ 21

*Karpilovksy v. All Web Leads, Inc.*,
   2017-cv-01307 (N.D. Ill. Aug. 8, 2019) ................................................................................. 26

*Kessler v. Am. Resorts Int'l.*,
   No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ................................................ 9

*King v. Trek Travel, LLC*,
   18-cv-345-wmc, 2019 U.S. Dist. LEXIS 215838 (W.D. Wis. Dec. 12, 2019) ........................ 26

*Lacy v. Cook Cty.*,
   897 F.3d 847 (7th Cir. 2018) ................................................................................................. 13

*Linman v. Marten Transp., Ltd.*,
   No.: 3:22-cv-00204-jdp, 2024 U.S. Dist. LEXIS 225166 (W.D. Wis. Dec. 11, 2024) ........... 22

*Loop LLC v. CDK Glob., LLC*,
   24-cv-571-jdp, 2025 U.S. Dist. LEXIS 82123 (W.D. Wis. Apr. 29, 2025) ........................... 25

*Majeski v. Balcor Entertainment Co.*,
   134 F.R.D. 240 (E.D. Wis. Jan. 18, 1991) ............................................................................. 20

*McCombs v. Delta Grp. Elecs., Inc.*,
   676 F. Supp. 3d 1064 (D.N.M. June 9, 2023) ....................................................................... 23

*McFields v. Dart*,
   982 F.3d 511 (7th Cir. Dec. 8, 2020) .................................................................................... 14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................................... 27

*Muro v. Target Corp.*,
   580 F.3d 485 (7th Cir. 2009) ................................................................................................. 14

*Orr v. Shicker*,
   953 F.3d 490 (7th Cir. 2020) ................................................................................................. 12

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ........................................................... 14

*Panighetti v. Intelligent Bus. Sols., Inc.*,
  1:23CV209, 2025 U.S. Dist. LEXIS 123406 (M.D.N.C. June 30, 2025) ................................ 23

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ........................................................... 25

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993) ........................................................... 14

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ........................................................... 9

*Ross v. Gossett*,
  33 F.4th 433 (7th Cir. 2022) ........................................................... 15

*Solomon v. Deer Oaks Mental Health Assocs., P.C.*,
  No. SA-23-CV-1465-FB, 2024 U.S. Dist. LEXIS 180416 (W.D. Tex. Sept. 2024) ................ 23

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................... 12, 13

*Wong v. Accretive Health*, Inc.,
  773 F.3d 859 (7th Cir. 2014) ........................................................... 21

## Other Authorities

Conte & Newberg,
  *Newberg on Class Actions* (4th ed. 2002) ........................................... 10, 19, 24

Duke Law School,
  *Implementing 2018 Amendments to Rule 23* .................................................. 29

McLaughlin on Class Actions (8th ed. 2011) .................................................. 22

*Newberg*, *Manual for Complex Litigation* (Fourth) ...................................... 12, 20

## Rules

Federal Rules of Civil Procedure, Rule 23 .. ii, 2, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 26, 28, 29, 30

## I.    INTRODUCTION

On or about December 8, 2023, Manitou North Defendants America, LLC and Manitou Equipment America, LLC ("Manitou" or "Defendants") were the victim of a data security incident that affected the Personal Information[1] of approximately 11,414 individuals (the "Security Incident"). Plaintiffs Patrick Ernster and Ramsey Hofius, employees of Defendants and victims of the Security Incident, commenced the above-captioned litigation on July 10, 2024 (ECF 1), later amending their complaint on September 9, 2024 (ECF 16) to include Trevar Black as an additional named Plaintiff. Plaintiffs sought relief from Manitou for its role in the alleged compromise of class members' Personal Information.

Recognizing the risks of protracted litigation, and after an exchange of pertinent information and an all-day arms'-length mediation before mediator Bruce Friedman of JAMS, the Parties eventually came to an agreement on a settlement in principle.

Plaintiffs now, by and through their counsel, present this Unopposed Motion for Preliminary Approval of the Class Action Settlement. *See* Settlement Agreement ("S.A."), attached as **Exhibit 1** to the Joint Declaration of Plaintiffs' Counsel ("Joint Decl.") filed herewith. The Settlement is structured to provide significant relief to the approximately 11,414 individuals whose Personal Information was potentially impacted in the Security Incident by establishing a non-reversionary Settlement Fund of $487,500. The Settlement Fund is structured to provide: (1) an automatic *pro rata* Cash Fund Payment to Settlement Class Members; (2) notice and settlement administration; and (3) court approved attorneys' Fee Award and Expenses. If approved, the Settlement will bring certainty, closure, and significant and valuable relief to those individuals as

---

[1] Unless otherwise noted, all capitalized terms have the meanings ascribed to them in the Settlement Agreement.

opposed to what otherwise would likely be contentious and costly litigation over Manitou's alleged failure to adequately safeguard the Personal Information of its current and former employees.

Plaintiffs Patrick Ernster, Ramsey Hofius and Trevar Black now seek preliminary approval of the Settlement, certification of a Settlement Class, appointment of Class Counsel, and approval of the proposed form and method of class notice. This memorandum describes in detail the reasons why preliminary approval is in the best interests of the Settlement Class Members and is consistent with Federal Rule 23. As discussed in more detail below, the proposed class should be certified and the settlement preliminarily approved so that notice may issue to the class.

## II.    RELEVANT BACKGROUND

### A.    **Manitou**

Defendants are the American subsidiaries of Manitou Group, a heavy equipment manufacturer of forklifts, cherry pickers, telehandlers, and other heavy equipment. Plaintiffs' First Amended Class Action Complaint ("FAC") (ECF 16) ¶ 2. Manitou supports 450 locations that provide "valuable solutions for [] customers in the construction, agriculture, rental, and industrial markets." *Id.*

Plaintiffs and members of the proposed class are current and former employees of Defendants or are individuals who otherwise provided their Personal Information to Defendants in the course of their employment or business relationship. *See Id.* ¶¶ 63-65. Such Personal Information included: names, dates of birth, Social Security numbers, credit and/or debit card numbers, medical history (including condition, treatment, diagnosis, patient name, patient address, medical record number, prescription information, diagnosis, treatment, condition, dates of service), health benefits and enrollment information, financial account numbers with passwords or routing numbers, and Internal Revenue Service tax identification numbers. *Id.* ¶ 25..

2

B.     **The Security Incident**

On or about December 24, 2023, Defendants became aware that an unauthorized third party had gained access to its computer network. *Id*. ¶ 31. Defendants launched an investigation, which revealed that the unauthorized third party had "accessed and/or acquired" Personal Information during the incident. *Id*. ¶ 33. Plaintiffs alleged that a cybercriminal group was responsible for the Security Incident. *Id*. ¶¶ 54-60. Plaintiffs all received notice that their Personal Information was affected by the Security Incident. *Id*. ¶¶ 68-70.

C.     **The Class Action Complaint**

On July 10, 2024 Plaintiffs Patrick Ernster and Ramsey Hofius filed their original class action complaint in the Western District of Wisconsin. That same day, Plaintiff Trevar Black filed a complaint against Defendants in the Eastern District of Wisconsin, also related to the Security Incident. *See* Class Action Complaint, ECF 1, *Trevar Black v. Manitou Equipment et al.*, No. 2:24-cv-00862 (E.D. Wis. July 10, 2024) (the "*Eastern Action*"). After seeing significant benefit in pursuing the Litigation together, Plaintiffs' counsel conferred and on August 1, 2024, Plaintiff Black voluntarily dismissed the Eastern Action without prejudice. *Eastern Action*, (ECF 5).

Thereafter, on September 9, 2024, Plaintiffs' filed their First Amended Complaint, adding Plaintiff Black as an additional named Plaintiff. Joint Decl. ¶ 5. Plaintiffs brought claims for negligence, breach of implied contract; negligence *per se*, breach of fiduciary duty, unjust enrichment, invasion of privacy, Violation of the Wisconsin Deceptive Trade Practices Act Wis. Stat. §§ 100.18, *et seq*. and declaratory and injunctive relief.

On November 4, 2024, Defendants moved to dismiss Plaintiffs' FAC. Defendants' motion was fully briefed, yet never ruled on. *Id*. Recognizing the risks of protracted litigation, in February 2025, the parties began to discuss settlement. *Id*.

3

D.    **History of Negotiations**

In or around late March 2025, the Parties agreed to use experienced mediator, Attorney Bruce Freidman of JAMS, to facilitate settlement negotiations. *Id*. Mr. Friedman has extensive experience in class action mediation generally and data breach mediation in particular. *Id*.

Prior to the mediation, the Parties prepared detailed mediation submissions setting forth their respective views as to the strengths of Plaintiffs' case and Defendants' defenses. *Id*. ¶ 6. Furthermore, Defendants produced informal discovery to Proposed Class Counsel, including information about the cause and scope of the Security Incident and information about the number of individuals affected. *Id*. This information allowed Plaintiffs' counsel to be well-informed prior to engaging in settlement discussions. *Id*.

On June 5, 2025, the Parties attended a full day mediation via Zoom with Mr. Friedman. *Id*. ¶ 7. At all times, the settlement negotiations were highly adversarial, non-collusive, and conducted at arm's length. *Id*. By the end of the full-day mediation, the Parties reached an agreement in principle after extensive negotiations. *Id*. Over the ensuing weeks, the Parties continued negotiating the finer points of the Settlement Agreement, diligently drafting and finalizing the Settlement, Notice, and Claim Forms, and drafting the motion for preliminary approval for presentment to the Court. *Id*.

III.    **THE PROPOSED SETTLEMENT**

A.    **The Settlement Class**

The proposed Class is defined as:

> All individuals residing in the United States whose Personal Information was compromised in the Security Incident experienced by Defendants in or around December 2023, including all those individuals who received notice of the breach

S.A. ¶ 36. The Settlement specifically excludes: (1) the judges presiding over this Litigation, and members of their immediate families; (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*

The Class is comprised of approximately 11,414 individuals. *Id.*

B.    **The Settlement**

The Settlement negotiated on behalf of the Class provides for the creation of a non-reversionary common fund in the amount of $487,500. *Id.* ¶ 39. The fund is structured to provide cash benefits to Settlement Class Members, as well as the costs of notice and administration, and court approved attorneys' Fees and Expense Award and Service Awards. *See id.* ¶¶ 49, 56, 63-65, 81, 83.

*1.   Cash Benefits*

Settlement Class Members who do not timely and validly exclude themselves from the Settlement shall automatically receive a Cash Fund Payment without the need to submit a claim form. Joint Decl. ¶ 18; S.A. ¶ 47.  The amount of each payment will be determined on a *pro rata* basis from the Net Settlement Fund. S.A. ¶¶ 41, 47, 49. Settlement Class Members can elect to receive their Cash Fund Payment electronically by submitting a request through the Settlement Website. *Id.* ¶ 50.

*2.   Equitable Relief*

In addition to the monetary relief, Manitou has implemented security enhancements since, and in response to, the Security Incident. *Id.* ¶ 62. The costs associated with these security-related measures will be borne solely by Defendants and will be paid separate and apart from any other

5

settlement benefits from the Settlement Fund. *Id*. Although the exact cost of the security-related measures is not available, they are believed to be significant. *Id*.

### 3. Release

The release in this case is tailored to the claims that have been plead or could have been plead related to the Security Incident. *See Id*. ¶¶ 29-31, 77-80. Class Members who do not exclude themselves will release any and all claims arising from the Security Incident and/or the recordkeeping or data security practices in place at the time of the Security Incident. *Id*. ¶¶ 67, 77-80

### C.     **Notice and Settlement Administration**

After gathering competitive bids, and subject to Court approval, the Parties have agreed to use Simpluris as the Settlement Administrator. Joint Decl. ¶ 8. The Notice plan requires direct notice be provided by U.S. mail to the addresses contained in Defendants' records and previously used to provide initial notice of the Security Incident. S.A. ¶¶ 37, 63. Within thirty (30) days of the date when the Preliminary Approval Order (S.A., Ex. C) is entered, the Settlement Administrator will send the Short Form Notice (S.A., Ex. A) to Settlement Class Members. *Id*. ¶ 63. For any Notices returned as undeliverable, the Settlement Administrator will use reasonable efforts (e.g., skip tracing) to identify an updated mailing address and re-mail the postcard if one is identified. *Id*. ¶ 64.

The Settlement Administrator will also establish a dedicated Settlement Website, which will contain the Court orders in this Litigation, the Settlement Agreement, the Long Form Notice, Plaintiffs' motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiffs' motion for an award of attorneys' Fees and Expense Award, and Service Awards, and the operative complaint in the Litigation. *Id*. ¶ 65. The Settlement Website will also include a toll-

free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator. *Id*. In addition, the Settlement Website will include a mechanism by which Settlement Class Members can elect to receive their Cash Fund Payment electronically. *Id*. ¶¶ 2, 65

D.    **Exclusion & Objection Procedures**

The timing of the Notice is structured to provide that Settlement Class Members have adequate time to review the terms of the Settlement Agreement, elect to receive their Cash Fund Payment electronically, and decide whether they would like to opt-out or object. Joint Decl. ¶ 20.

1.    *Requests for Exclusion*

To request exclusion from the Settlement, a Class Member must, within 60 days from the Notice Deadline, make their request in writing, including the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. *Id.* ¶ 22, 67.

2.    *Objections*

To object to the Settlement, a Class Member must, within 60 days from the Notice Deadline, submit their objection(s) in writing to the Settlement Administrator. *Id.* ¶¶ 21, 68. The written objection must include (i) the name of the Litigation; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection and a description of whether the objection applies only to the Settlement Class Member, a subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of any attorneys representing the objector (if any); (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear

7

at the Final Approval Hearing; (vi) a description and/or copies of evidence that may be introduced at fairness hearing; (vii) a list of proceedings in which the Settlement Class Member has submitted an objection during the past five years; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* ¶ 68.

The procedures and specific deadlines for filing exclusion requests and objections will be identified in the Short Form Notice directly sent to Class Members, and will be described in more detail in the Long Form Notice that will be available to all Class Members on the Settlement Website. *Id.* ¶¶ 64-65. The proposed Notice will include, in a manner that is understandable to potential class members, information regarding: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Joint Decl. ¶ 21.

## IV.    LEGAL STANDARD

Courts review proposed class action settlements using a well-established two-step process. *See* Conte & Newberg, *Newberg on Class Actions*, § 11.25, at 38-39 (4th ed. 2002); *see also In re TikTok, Inc., Consumer Privacy Litigation,* 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). At the first, preliminary approval stage, the district court must make three essential inquiries.

First, the court must determine whether it "will likely be able" to certify the putative class for purposes of judgment on the proposed settlement. *In re TikTok,* 565 F. Supp. 3d at 1083, citing Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Berglund v. Matthews Senior Hous. LLC,* No. 21-cv-108-pp, 2023 U.S. Dist. LEXIS 185972, at *5 (E.D. Wis. Oct. 17, 2023).

Second, the district court must determine whether the proposed settlement is "within the range of possible approval" with regard to the criteria set forth in Rule 23(e)(2). The purpose of the inquiry is only "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) , "not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards[.]" *Am. Int'l Grp. v. ACE INA Holdings, Inc.,* 2011 U.S. Dist. LEXIS 84219, at *32 (N.D. Ill. Jul. 26, 2011). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l.*, No. 05-cv-5944, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

Finally, if the district court finds that it will likely be able to certify the putative class and that the proposed settlement is within the range of possible approval, the court must then direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23(e)(1); *In re TikTok, Inc,* 565 F. Supp. 3d at 1083.

## V.    ARGUMENT

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the district court must: (1) determine whether it will likely be able to certify the putative class for purposes of judgment on the proposed settlement; (2) determine whether the proposed settlement is within the range of possible approval with regard to the criteria set forth in Rule 23(e);

9

and (3) approve the proposed notice plan and direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re Tiktok,* 565 F. Supp. 3d at 1084 (internal citations omitted).

Here, the Class meet the standards for certification; the proposed settlement is an outstanding result for Class Members and well within the range of possible approval; and the notice program proposed by the Parties meets all requirements of due process and Rule 23. Thus, this Court should grant preliminary approval.

### A. **The Court Should Grant Class Certification for Settlement Purposes**

The Parties have agreed that, for settlement purposes only, the Court should make preliminary findings and enter an Order granting provisional certification of the Class and appointing Plaintiffs Patrick Ernster, Ramsey Hofius and Trevar Black as Class Representatives and Cassandra P. Miller of Strauss Borrelli PLLC and Leigh Montgomery of EKSM LLP as Class Counsel. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]…An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect

10

the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.; see also Yvonne Mart Fox v. Iowa Health Sys.,* 18-cv-327-jdp, 2020 U.S. Dist. LEXIS 177466, at *7 (W.D. Wisc. Sept. 16, 2020). Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem*, 521 U.S. at 620.

Class actions are regularly certified for settlement. In fact, numerous similar data breach class actions have been recently certified on a national basis. *In re Retina Grp. of Wash. Data Sec. Incident Litig.*, No. DKC 24-0004, 2025 U.S. Dist. LEXIS 139159, at *7-8 (D. Md. July 21, 2025); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-2070, 2025 U.S. Dist. LEXIS 105490, at *27 (S.D. Ohio Apr. 11, 2025); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* (Case Nos. omitted), 2025 U.S. Dist. LEXIS 23719, at *26 (S.D. Fla. Feb. 11, 2025); *In re Onix Grp., LLC Data Breach Litig.*, NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686, at *48

11

(E.D. Pa. Dec. 13, 2024). This Class should be similarly certified. *See Yvonne Mart Fox v. Iowa Health Sys.,* No.: 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *8-9 (W.D. Wis. Mar. 4, 2021) ) (granting final approval of data breach class action settlement).

    Here, the Class meets the requirements of Rule 23 and warrants certification.

### 1. The Class is sufficiently numerous and joinder is impracticable

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "a forty-member class is often regarded as sufficient to meet the numerosity requirement," *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020), 40 is not a magic number; courts have certified classes of fewer than 40 members and denied certification of larger classes. *Antrim v. Carr*, No. 19-cv-0396-bhl, 2023 U.S. Dist. LEXIS 221665, at *8 (E.D. Wis. Dec. 13, 2023). Here, the proposed Class encompasses over 11,414 individuals. S.A. ¶ 36. Thus, there is no question numerosity is satisfied.

### 2. Questions of law and fact are common to the members of the Settlement Class.

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556; *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 984 (11th Cir. 2016) (same); *Bauer v. Kraft Foods Global, Inc.,* 277 F.R.D. 558, 562 (W.D. Wis. Feb. 15, 2012) (finding commonality where central issues were common to whole class).

Here, the questions of law and fact at issue arise from common operative facts—the circumstances concerning Security Incident—and commonality is satisfied because the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members. *Bruzek v. Husky Oil Operations Ltd.*, 520 F. Supp. 3d 1079, 1094 (W.D. Wis. Feb. 19,

2021). The Plaintiffs' claims center on whether Defendants failed to adequately safeguard the records of Plaintiffs and other Class Members. For example, issues common to all class members include:

- Whether Defendants owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiffs' and Class Members' Personal Information;

- Whether Defendants knew or should have known that they did not employ reasonable measures to keep the Personal Information of Plaintiffs and Class Members secure; and

- Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their Personal Information had been compromised. *See* FAC ¶ 179.

These common questions, and others alleged by Plaintiffs in their First Amended Class Action Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis because they all tie back to the same common nucleus of operative facts—the Security Incident and Defendants' data protection measures. *See Lacy v. Cook Cty.*, 897 F.3d 847, 865 (7th Cir. 2018) (holding a common injury is one that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ). Thus, Plaintiffs have satisfied the commonality requirement of Rule 23.

### 3.  *The Claims of the Plaintiffs are Typical of the Claims of Class Members*

Commonality is met where the named plaintiffs' claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory. *Hills v. Essentia Health*, 19-cv-907-wmc, 2021 U.S. Dist. LEXIS 244810,

at *21 (W.D. Wis. Dec. 23, 2021). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Put another way, although the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. *McFields v. Dart,* 982 F.3d 511, 518 (7th Cir. Dec. 8, 2020) (quoting *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009))

Here, the claims of the Plaintiffs and all Class Members arise out of the same course of conduct—that Defendants collected and failed to adequately protect the Class Members' Personal Information—and assert the same theories of liability. As a result, Plaintiffs' have met the typicality requirement.

4. *The Class Representatives have and will continue to provide adequate representation for Class Members*

The "adequacy" requirement of Rule 23(a) has two components: (1) the representatives must not possess interests which are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation. *In re Tiktok, Inc.,* 565 F. Supp. 3d at 1085 (quoting *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Here, the Plaintiffs and Class Counsel meet the test of adequacy.

First, the Plaintiffs' interests are entirely representative of and consistent with the interests of all Class Members: all have had their personal identifying information compromised due to the alleged shortfalls in Manitou's data security measures. *See* FAC ¶¶ 114-128. Plaintiffs' pursuit of

this matter has demonstrated that they have been, and will remain, zealous advocates for the Class. Plaintiffs have the same interests as the Class, and are (more than) suitable representatives.

Similarly, Class Counsel have regularly engaged in major complex litigation, have extensive experience in class action lawsuits, and indeed, are among the leaders in pursuing complex data breach class actions in Wisconsin and across the country. Joint Decl. ¶¶ 11-14, Ex. 2-3. Accordingly, Plaintiffs and their counsel will adequately represent the Class.

> 5. *The Class Satisfies the Requirements of Rule 23(b).*

> a. <u>Common questions of law and fact predominate</u>

Predominance is satisfied by "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Ross v. Gossett*, 33 F.4th 433, 439 (7th Cir. 2022) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the Personal Information of Plaintiffs and the Class, and whether Defendants breached that duty. *See* FAC ¶¶ 51-53, 179. The common questions that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant]

properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also In re Fortra,* 2025 U.S. Dist. LEXIS 23719, at *41 (finding predominance satisfied where "[a]ll Settlement Class Members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person."); *In re Onix Grp.*, 2024 U.S. Dist. LEXIS 225686, at *15 (holding commonality met because "the proposed class members all suffered from the same data breach. There are common questions as to how the data breach occurred, whether [Defendants] had a duty to protect [consumers], and whether the [consumers] were harmed by the breach."); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"). Thus, this case meets the requirement of predominance.

b.  <u>A class action is the superior method for resolving these claims</u>

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of over eleven thousand claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of individual data breach cases arising out of the *same* Security Incident.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Class should be certified for settlement purposes.

B.     **The Settlement Should be Approved as Fair, Reasonable and Adequate.**

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017). Approval of a class action settlement is a two-step process. *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F3d 873 (7th Cir. 1998). First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls

within a range of possible approval. *Id*. If the court preliminarily approves the settlement, the class

members are notified. *See id*.

        The purpose of the preliminary hearing for a proposed settlement is to identify any issues

*before* notice goes out to the class. Rule 23(e) states that grounds exist for class notice where the

parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that

end, where, as here, the proposed settlement would bind class members, it may only be approved

after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following

factors:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At preliminary approval, the court looks to determine whether the

proposed settlement is "within the range of possible approval." *Bruzek v. Husky Energy Inc*., No.

18-cv-697 (W.D. Wis. Aug. 6, 2021) (citing *Gautreaux*, 690 F.2d at 621 n.3). If the court

preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the

preparation of notice of the certification, proposed settlement, and date of the final fairness

hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has been issued to the class, is a final fairness hearing. Fed. R. Civ. P. (e)(2); *see also* Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 U.S. Dist. LEXIS 12741, at *15-16 (N.D. Ill. Jan. 31, 2012) ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of the relevant factors supports preliminarily approving the Settlement and issuing notice.

### 1. The Plaintiffs and Class Counsel Have Adequately Represented the Class

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, Federal courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ). This is especially true, where, as here, the class action matter has a reputation as being complex. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, Class Counsel conducted extensive research regarding the Plaintiffs' claims, Manitou, and the Security Incident. Joint Decl. ¶ 3. The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Bruce Friedman of JAMS. *Id.* ¶ 5. Prior to the mediation, the Parties fully briefed the relevant issues, and Defendants provided information necessary for Class Counsel to fully evaluate the case. *Id.* ¶ 6. Even after reaching an agreement on the central terms, the Parties spent weeks fully negotiating the finer points of the Settlement Agreement. *Id.* ¶ 7. Thus, and considering Class Counsels' extensive experience in data breach litigation (*see id.* ¶¶ 11-14, Ex. 2-3), the Parties were able to carry out settlement negotiations with

a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *See Behrens v. Landmark Credit Union*, 17-cv-101-jdp, 2018 U.S. Dist. LEXIS 106358, at \*15-16 (W.D. Wis. June 26, 2018) (granting preliminary approval to privacy class settlement where the parties exchanged discovery which "indicates that the parties have considered the merits and risks of litigating compared to settling.").

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Class. *See Majeski v. Balcor Entertainment Co.,* 134 F.R.D. 240, 248 (E.D. Wis. Jan. 18, 1991). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Class Members. They thus have every incentive to vigorously pursue the claims of the Class, as they have done to date by assisting in the investigation of the case, providing the documents and other information needed to draft the FAC, maintaining contact with counsel, reviewing pleadings, remaining available for consultation throughout the mediations, answering counsel's many questions, and reviewing the Settlement Agreement. Joint Decl. ¶ 9. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Groshek v. Great Lakes Higher Educ. Corp*., 15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089, at \*9 (W.D. Wis. Apr. 13, 2016).

In a case where experienced counsel represents the Class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015); *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Class Counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. Joint Decl. ¶ 15. Class Counsel also believe that the

20

benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

### 2. The Settlement was Negotiated at Arms'-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Behrens*, 2018 U.S. Dist. LEXIS 106358, at*14 (finding a settlement proposed by an experienced third-party mediator "favors approval of the settlement"); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (same).[2]

Here, the Agreement resulted from good faith, arms'-length settlement negotiations after Defendants' motion to dismiss was fully briefed, and after a full-day mediation session with respected mediator Bruce Freidman of JAMS. Joint Decl. ¶¶ 5-7. Prior to the mediation, the Parties fully briefed the relevant issues, and Defendants provided information necessary for Class Counsel to properly evaluate the strengths and weaknesses of Plaintiffs' claims. *Id.* ¶ 6. At all times, the settlement negotiations were adversarial, non-collusive, and at arm's length. *Id.* ¶ 7. On June 5, 2025, after the full-day mediation, the Parties executed a term sheet, but still spent over a month finalizing all settlement terms and documents. *Id.*

---

[2] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 U.S. Dist. LEXIS 52713, at *4 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. Dec. 31, 2009) (holding arms-length negotiations facilitated by a mediator for suggests that the settlement is fair and merits final approval).

Accordingly, it is clear that the Parties negotiated their settlement at arm's length and absent any fraud or collusion. *See, e.g.*, *Linman v. Marten Transp., Ltd.,* No.: 3:22-cv-00204-jdp, 2024 U.S. Dist. LEXIS 225166, at *3 (W.D. Wis. Dec. 11, 2024) (finally approving settlement resolved with the assistance of a mediator and "negotiated at arm's-length, in good faith and without collusion."); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *42 (N.D. Ill. Aug. 29, 2016)  (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery). Thus this factor weighs in favor of preliminary approval.

### 3.    *The Settlement Provides Substantial Relief for the Class*

The Settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed:  the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is

the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the Settlement provides a non-reversionary $487,500 Settlement Fund. S.A. ¶¶ 10, 83. Class Members will automatically receive a Cash Fund Payment by mailed check or, if elected, by electronic payment. *Id*. ¶ 47. No claim form is required. *Id*. The amount of each payment will be determined on a *pro rata* basis from the Settlement Fund. *Id*.

As such, and as further detailed below, the Settlement should be preliminarily approved with an order directing that Notice be provided to the Class.

  a. <u>The costs, risks, and delay of trial and appeal favor approval of the Settlement</u>

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Manitou will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Panighetti v. Intelligent Bus. Sols., Inc.*, 1:23CV209, 2025 U.S. Dist. LEXIS 123406, at *11 (M.D.N.C. June 30, 2025) (granting motion to dismiss data breach class action); *Solomon v. Deer Oaks Mental Health Assocs., P.C.*, No. SA-23-CV-1465-FB, 2024 U.S. Dist. LEXIS 180416, at *12 (W.D. Tex. Sept. 2024) (same); *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. June 9, 2023) (same).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No.

3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *94 (D.S.C. May 14, 2024).[3] Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 U.S. Dist. LEXIS 155137, at *8 (D. Minn. Nov. 17, 2015).

Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Class Members can have a chance at relief.

Plaintiffs dispute the defenses Defendants are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 U.S. Dist. LEXIS 115729, at *39.

  b.  <u>The method of providing relief is effective</u>

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should

---

[3] Plaintiffs note the court in *Blackbaud* found a lack of ascertainability, which Plaintiffs contend is not at issue here because Defendants maintain the very data—due to Defendants' direct employment relationships with the Class—necessary to determine who was the subject of the Security Incident and what PII was taken for each Settlement Class Member.  Defendants, however, would have challenged ascertainability in opposing a motion for class certification.

deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member benefits: there will be no claims process, as Settlement Class Members will receive a *pro rata* Cash Fund Payment automatically, without having to submit a claim form. Joint Decl. ¶ 18; S.A. ¶ 47. Further, Settlement Class Members will be able to receive an electronic payment at their election via the Settlement Website. Joint Decl. ¶ 18; S.A. ¶ 41, 49. Payments will be made within 30 days of the Effective Date, and such date will be posted on the Settlement Website. S.A. ¶¶ 2, 30. Accordingly, all Settlement Class Members will receive their award with a reasonable amount of time. Thus, the means by which the relief will be distributed is fair, efficient, and effective.

c. <u>The proposed award of attorneys' fees is fair and reasonable</u>

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii) . Class Counsel will seek an award of attorneys' fees  in the amount of $162,483.75—33.33% of the value of the total settlement. This percentage fee requested falls well within that of approved data breach (and other) class settlements in Wisconsin District courts and in courts throughout the nation. *Loop LLC v. CDK Glob., LLC*, 24-cv-571-jdp, 2025 U.S. Dist. LEXIS 82123, at *7 (W.D. Wis. Apr. 29, 2025) (noting "courts commonly approve fees that represent one-third of the total, after expenses are subtracted") (quoting *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014)); *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-cv-776, 2025 U.S. Dist. LEXIS 109746, at *15, *27, *43 (S.D. Ohio June 10, 2025) (approving attorney's fees of 25% of the $700,000 common fund and litigation expenses of $12,287); *In re Phila. Inquirer Data Sec. Litig.*, NO. 24-2106-KSM, 2025 U.S. Dist. LEXIS 48541,

at *35-37, *41 (E.D. Pa. Mar. 18, 2025) (approving 33% fee award distribution of a common fund of $525,000); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* (case nos. omitted), 2025 U.S. Dist. LEXIS 23719, at *56 (S.D. Fla. Feb. 11, 2025) (approving attorney's fees of 33.3%, of the $7,000,000.00 common fund and $39,237.40 in reasonable litigation costs); *In re Onix Grp., LLC Data Breach Litig.*, NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686, at *7. *46-47 (E.D. Pa. Dec. 13, 2024) (approving attorney's fees of 33.3% of the $1,250,000 common fund and $12,032 in litigation expenses); *Benoskie v. Kerry Foods, Inc*., No. 19-cv-684-pp, 2020 U.S. Dist. LEXIS 177538, at *7 (E.D. Wis. Sept. 28, 2020) (fining attorney' fees in the amount of one-third (33%) "fair and reasonable and approximates the market rate"); *King v. Trek Travel, LLC*, 18-cv-345-wmc, 2019 U.S. Dist. LEXIS 215838, at *6-7 (W.D. Wis. Dec. 12, 2019) (approving attorneys' fees and costs of $140,250, representing one-third of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 2017-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees of 35% of the settlement fund). Class Counsel achieved an excellent result for the Class after undertaking substantial risk in bringing this action on a pure contingency basis, and they should be fairly compensated. *See* Joint Decl.  ¶ 4.

Prior to final approval, Class Counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Notices. *See id*. ¶ 10. At this stage of the Settlement, the requested fees and costs are clearly within the range of possible approval, and support preliminary approval of the Settlement Agreement.

d.  <u>Additional agreements do not undercut the adequacy of the Settlement.</u>

There are no previously undisclosed agreements that would undercut the adequacy of the Settlement. Thus, this factor should weigh in favor of approval.

### 4. The Settlement Agreement Treats Class Members Equitably to Each Other

Here, the proposed Settlement does not improperly discriminate between any segments of the Class. All Class Members will receive the exact same relief. S.A. ¶ 47. Importantly, direct Notice will be sent to Class Members, and all Class Members will also have the opportunity to object to or exclude themselves from the settlement. *Id*. ¶¶ 63-68.

Accordingly, this factor also weighs in favor of preliminary approval.

**C.    The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of communication have evolved, and permitting notice by electronic means, including e-mails, digital media, and social media, may provide the best practicable notice under the circumstances. Duke Law School, *Implementing 2018 Amendments to Rule 23*, Rules Appendix C, at *17-18.23. Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to amended Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods

are best may disregard contemporary communication realities." Duke Law School, *Implementing 2018 Amendments to Rule 23*, Rules Appendix C, at *19. Consistent with that directive, Class Counsel and the Settlement Administrator structured the Notice to provide that Settlement Class Members adequate time to review the terms of the Settlement Agreement, elect to receive their Cash Fund Payment electronically, and decide whether they would like to opt-out or object. Joint Decl. ¶ 20. For any Notices returned as undeliverable, the Settlement Administrator will use reasonable efforts, including skip tracing, to obtain updated addresses and re-mail the Notice. *Id.*

Here, notice will be provided directly to individual Settlement Class Members via the contact information they provided to Defendants during their employment relationship. *Id.* ¶ 19. The Short Form Notice will be disseminated via postcard through First Class U.S. mail to Settlement Class Members and will also be made available on the Settlement Website. S.A. ¶ 63. For any postcard Notices returned as undeliverable, the Settlement Administrator shall use reasonable efforts (e.g., skip tracing) to identify an updated mailing address and re-mail the postcard if one is identified. *Id.* Further, the Settlement Website will enable Settlement Class Members to view relevant documents, get answers to frequently asked questions, and elect to receive their Cash Fund Payment electronically. *Id.* ¶ 65. The Notice and Settlement Website will also provide Settlement Class Members with contact information for the Settlement Administrator to provide Settlement Class Members with a contact to answer any questions they may have. *Id.*

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class

judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included in both the Long Form Notice and Short Form Notice in language that is easy to understand. Joint Decl.¶ 15; S.A., Ex. A-B.

Because the Class Notice plan set forth in the Settlement Agreement satisfies the requirements of due process and Federal Rule of Civil Procedure 23, and provides the best notice practicable under the circumstances, the Court should direct the Parties and the Settlement Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

## VI.    CONCLUSION

Plaintiffs respectfully request that this Court (1) conditionally approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiffs Patrick Ernster, Ramsey Hofius and Trevar Black Class Representatives, (3) appoint Plaintiffs' counsel as Class Counsel, (4) provisionally certify the Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Class Members to submit objections and requests for exclusion, and (7) set a date for a Final Approval Hearing.  A proposed Preliminary Approval Order is attached to the Settlement Agreement, at Exhibit D.

Dated: August 14, 2025                    Respectfully submitted,

                                          By: */s/ Cassandra P. Miller*
                                          Cassandra P. Miller (*Pro Hac Vice*)
                                          Samuel J. Strauss (SBN: 1113942)
                                          Stephen J. Pigozzi (*Pro Hac Vice*)
                                          **STRAUSS BORRELLI PLLC**
                                          One Magnificent Mile
                                          980 N. Michigan Ave., Suite 1610

Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com
sam@straussborrelli.com
spigozzi@straussborrelli.com

Leigh S. Montgomery (*Pro Hac Vice* forthcoming)
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

Jarrett Lee Ellzey
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, TX 77006
Telephone: (713) 554-2377
Facsimile: (888) 276-3455
jarrett@ellzeylaw.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that on August 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 14th day of August, 2025.

STRAUSS BORRELLI PLLC

By: */s/ Cassandra P. Miller*
     Cassandra P. Miller
     One Magnificent Mile
     980 N Michigan Avenue, Suite 1610
     Chicago IL, 60611
     Telephone: (872) 263-1100
     Facsimile: (872) 263-1109
     cmiller@straussborrelli.com