# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PATRICK ERNSTER, RAMSEY HOFIUS and TREVAR BLACK, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>MANITOU EQUIPMENT AMERICA, LLC and MANITOU NORTH AMERICA, LLC,<br><br>Defendants. | Case No.: 3:24-cv-462-wmc<br>Honorable William M. Conley |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES AWARD AND SERVICE AWARDS**

On November 5, 2025 (ECF. No. 45), the Court preliminarily approved a proposed class action settlement between Plaintiffs and Manitou Equipment America, LLC and Manitou North America, LLC ("Manitou" or "Defendants") (collectively the "Parties"). *See* ECF No. 45. Class Counsel's efforts created distinct monetary benefits for the approximately 11,414 Settlement Class Members in the form of an automatic *pro rata* Cash Fund Payment[1] from a non-reversionary Settlement Fund of $487,500.00. The Court-approved notice of the proposed Settlement has been sent to the Class and a final approval hearing is scheduled for March 5, 2026. Plaintiffs respectfully request that the Court approve the Attorneys' Fees and Expenses Award and Service Awards contemplated by the Settlement. The requested Fees and Expenses Award and Service Awards are reasonable, are similar to those awarded in similar litigation, are to be paid by Defendants from the Settlement Fund and recognize the efforts of Class Counsel and the Plaintiffs in achieving a benefit for thousands of other people, all at their own risk.

I.   **INTRODUCTION**

A.  **The Security Incident, Plaintiffs' Claims, and Defendant's Response**

Defendants are manufacturers of forklifts, cherry pickers, telehandlers, and other heavy equipment and support a network of more than 450 dealerships. First Amended Class Action Complaint, ECF No. 16 ("Am. Compl.") ¶ 2. As an employer, Manitou receives and maintains the Personal Information of thousands of its current and former employees. *Id*. ¶ 27. That information may include names, addresses, dates of birth, Social Security numbers, driver's license numbers, financial information and health insurance information. *Id*. ¶ 37. Plaintiffs allege that in so doing, Manitou agreed to safeguard the data. *Id*. ¶ 28. Despite this, Plaintiffs alleged that Manitou never implemented the safeguards and systems needed to fulfill those promises. *Id*. ¶¶ 43, 114-128. As a

---

[1] Unless otherwise indicated, the capitalized terms herein carry the same meaning as those in the Settlement Agreement.

1

result, Plaintiffs alleged that Manitou's misconduct led to the Security Incident. *Id.* ¶ 43. Defendants have denied these allegations.

Plaintiffs are former employees of Defendants. *Id.* ¶¶ 63-65. On September 9, 2024, Plaintiffs filed their First Amended Class Action Complaint against Defendants (ECF. No. 16). asserting claims arising out of the Security Incident. *Id.* ¶¶ 190-269. Plaintiffs demanded that Manitou reimburse Plaintiffs and the Class for their alleged losses. *See id.*

Prior to filing this action, Plaintiffs' counsel conducted an extensive pre-suit investigation to ascertain all publicly available details about the cause, scope, and result of the Security Incident, as well as about the damages allegedly suffered by Plaintiffs and the Class. *See* Joint Declaration of Counsel in Support of Unopposed Motion for Attorneys' Fees and Expenses Award and Service Awards ("Fee Decl.") ¶ 7.

### B. The Parties' Negotiations and Settlement

In or around late March 2025, the Parties agreed to use experienced mediator, Attorney Bruce Freidman of JAMS, to facilitate settlement negotiations. Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 42 ("Preliminary Approval Motion") at 4. Mr. Friedman has extensive experience in class action mediation generally and data breach mediation in particular. *Id*.

Prior to the mediation, the Parties prepared detailed mediation submissions setting forth their respective views as to the strengths of Plaintiffs' case and Defendants' defenses. *Id*. Furthermore, Defendants produced informal discovery to Proposed Class Counsel, including information about the cause and scope of the Security Incident and information about the number of individuals affected. *Id*. This information allowed Plaintiffs' counsel to be well-informed prior to engaging in settlement discussions. *Id*.

On June 5, 2025, the Parties attended a full day mediation via Zoom with Mr. Friedman. *Id*. ¶ 7. At all times, the settlement negotiations were highly adversarial, non-collusive, and conducted at arm's length. *Id*. By the end of the full-day mediation, the Parties reached an agreement in principle after extensive negotiations. *Id*. Over the ensuing weeks, the Parties continued negotiating the finer points of the Settlement Agreement, diligently drafting and finalizing the Settlement, Notice, and Claim Forms, and drafting the motion for preliminary approval for presentment to the Court. *Id*. Importantly, the Parties did not determine Class Counsel's Fee and Expense Award or Plaintiffs' Service Awards until after they agreed on benefits for the Settlement Class. Fee Decl. ¶ 8.

The Parties finalized the terms of the Settlement and Plaintiffs proceeded to move for preliminary approval of the Settlement on August 14, 2025. ECF Nos. 41-43. Following a hearing, the Court granted preliminary approval on November 5, 2025. ECF No. 45.

Since preliminary approval, Class Counsel has worked to implement class notice and supervise claims administration. *See* Fee Decl. ¶ 9. Those efforts will be ongoing through, and after, final approval. *Id.*

## II.   BENEFITS UNDER THE SETTLEMENT

The Settlement negotiated on behalf of the Class provides for the creation of a non-reversionary common fund in the amount of $487,500.00. Settlement Agreement, ECF. No. 43, Ex. #1 ("S.A.") ¶ 39. The fund is structured to cover cash benefits, the costs of notice and administration, and court-approved attorneys' fees, costs, and service awards.

### A.  Cash Benefits

From the fund, Settlement Class Members will receive an automatic Cash Fund Payment, without having to complete a claim form. S.A. ¶ 46-47. The amount of each payment will be

determined on a *pro rata* basis from the Net Settlement Fund. *Id*. ¶¶ 41, 47, 49. Settlement Class Members can elect to receive their Cash Fund Payment electronically by submitting a request through the Settlement Website. *Id.* ¶ 50.

### B. Equitable Relief

In addition to the monetary benefits, the Settlement Agreement also provides for equitable relief in the form of data security enhancements. *Id*. ¶ 62. To this end, Manitou has implemented security enhancements since, and in response to, the Security Incident. *Id*. The costs associated with these security-related measures will be borne solely by Defendants and will be paid separate and apart from any other settlement benefits from the Settlement Fund. *Id*.

### III.   LEGAL ARGUMENT

#### A. Class Counsel's Requested Fee Award and Expenses are Reasonable

Rule 23(h) permits a district court to award reasonable attorneys' fees "that are authorized by law or by the parties' agreement." The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id*. That is because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id*.

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored for consumer class actions in the Seventh Circuit is to compute attorneys' fees as a percentage of the benefit conferred upon the class: "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Cap. One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be the "normal practice in consumer class actions"). As other courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D.

Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

The Seventh Circuit has also determined that, in assessing the reasonableness of requested attorneys' fee, courts should consider the ratio of "(1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (omitting administrative costs and service awards from analysis). The Seventh Circuit has clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

Here, Class Counsel's efforts have resulted in a $487,500.00 non-reversionary Settlement Fund that provides substantial, actual value to the Settlement Class. S.A. ¶ 39. Settlement Class Members will receive an automatic, Pro Rata Cash Payment without having to submit a claim form. *Id*. ¶ 47. None of the settlement fund will revert to Manitou. S.A. ¶ 52. Further, Settlement Class Members will benefit from the equitable relief provided by the Settlement Agreement: the Security Enhancements already undertaken by Manitou. *Id*. ¶ 62. The costs associated with these security-related measures shall be borne solely by Defendants and shall be separate and apart from any other settlement benefits and from the Settlement Fund. *Id*.

Consistent with Seventh Circuit guidance, Notice and Administrative Expenses and the requested Service Awards are excluded from the denominator. *Pearson*, 772 F.3d at 781 (finding administrative costs are not part of the value received by settlement by class members). Thus, subtracting the estimated administrative costs of approximately $38,972.00 (Fee Decl. ¶ 13) and litigation expenses of $11,303.04 (*id*. ¶ 14) from the overall settlement value of $487,500.00 equates to a value of $437,224.96. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th

6

Cir. 2014) (holding that in assessing the reasonableness of requested attorneys' fees, courts should consider the ratio of "(1) the fee to (2) the fee plus what the class members received."). Thus, Class Counsel's requested attorneys' Fees and Expenses Award of $162,483.75 equates to a mere 27%[2] of the requested fee plus what the class members receive (the "Proper Denominator"). Under Seventh Circuit precedent this fee request is presumptively reasonable.[3] *See Pearson*, 772 F.3d at 782.

1. *The Requested Fee Is Reasonable Under Seventh Circuit Attorney Fee Analysis*

"Reversionary" or "claims made" settlements, where the defendant takes back any amount of unclaimed/unused settlement funds, have come under scrutiny by the Seventh Circuit. Here, however, there is a non-reversionary, "true" lump-sum cash fund of $487,500.00. *Pearson*'s discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), highlights the difference:

> [I]n [Boeing] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." Id. at 479. "Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id*. at 480 n.5. The class members [in Boeing] were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id*. at 480–81. [Unlike in Boeing,] . . . [t]here is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did.

*Pearson*, 772 F.3d at 782. Here, the $487,500.00 non-reversionary common fund presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*. Further, each Settlement Class Member has "an undisputed and mathematically

---

[2] That is, $162,483.75/($162,483.75+$437,224.96 ).
[3] For clarity, in no event will Defendants be required to pay more than the amount defined in the Settlement Fund, $487,500.00, which represents the full and complete limit and extent of Defendants' obligations under the Settlement Agreement. See S.A. ¶¶ 39, 44.

7

ascertainable claim" to their share of a lump-sum judgment. And while, in a reversionary settlement "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims," *id.*, this case presents no such issue because (1) Settlement Class Members receive a Cash Fund Payment without the need to submit a claim and (2) no money will revert to Defendants.

Class Counsel further submits that at 27% of the Proper Denominator, this fee request is reasonable, consistent with—and in fact at the low end of—market rates, and should be approved. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *Novin v. Johnson Controls, Inc.,* No. 24-cv-46-pp, 2026 U.S. Dist. LEXIS 3112, at *13-16 (E.D. Wis. Jan. 8, 2026) (approving attorney's fees and costs of 30% of the settlement fund); *Neeck v. Moving*, 2021 U.S. Dist. LEXIS 92237, *8-10 (W.D. Wis. May 14, 2021) (noting "[m]arket rates [for contingent attorneys' fees] are within the 30% to 40% range" and approving attorney's fee award of one-third of the settlement fund (citation omitted)); *King v. Trek Travel, LLC*, 18-cv-345-wmc, 2019 U.S. Dist. LEXIS 215838, at *6-8 (W.D. Wis. Dec. 12, 2029) (same); *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovsky v. All Web Leads, Inc.*, No. 2017-cv-01307 (N.D. Ill. Aug. 8, 2019), ECF No. 173 (approving 35% of the settlement fund).[4]

---

[4] Further, Class Counsel's combined lodestar is currently $168,580.00. Fee Decl. ¶¶ 17-20. Accordingly, the requested fee award does not represent a windfall to Class Counsel. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

### 2. The Risk Associated with this Litigation Justifies the Requested Fee Award

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court, in applying percentage-of-the-fund approach, refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] . . . [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

The difficulty and risk of data breach litigation is high and weighs in favor of granting Plaintiffs' request for attorneys' fees. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles—even just to make it past the pleading stage. *See Panighetti v. Intelligent Bus. Sols., Inc*., 1:23CV209, 2025 U.S. Dist. LEXIS 123406, at *11 (M.D.N.C. June 30, 2025) (granting motion to dismiss data breach class action); *Solomon v. Deer Oaks Mental Health Assocs*., P.C., No. SA-23-CV-1465-FB, 2024 U.S. Dist. LEXIS 180416, at *12 (W.D. Tex. Sept. 2024) (same); *McCombs v. Delta Grp. Elecs., Inc*., 676 F. Supp. 3d 1064, 1074 (D.N.M. June 9, 2023) (same).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972, 2024 U.S. Dist. LEXIS 234064, at *47 (D.S.C. Dec. 30, 2024). Data privacy law is unsettled, and the magnitude and complexity of legal issues involved in this case demonstrate the heightened risk Plaintiffs' Counsel were willing to take on and reinforce the reasonableness of Class Counsel's requested fee.

### 3. The Requested Fee Comports with the Contract Between Plaintiffs and Class Counsel, and Typical Contingency Fee Agreements in this Circuit

The "actual fee contracts that were negotiated for private litigation" may also be relevant considerations to a fee request." *Taubenfeld v. AON Corp.*, 415 F.3d at 599 (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d at 323 (finding 40% to be "the customary fee in tort litigation"); *Retsky Fam. Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"). The agreement between Plaintiffs and Counsel for Plaintiffs is consistent with such customary contingency agreements. Fee Decl. ¶¶ 4-5.

The fees contemplated under Class Counsel's representation agreements for cases in this District and elsewhere generally fall within the one-third to 40% range. *Id*. This factor supports a finding that the requested fee reflects an amount less than Class Counsel would have received had they negotiated their fee *ex ante* and should be awarded.

10

> 4. *The Requested Fee Comports with the Contract Between Plaintiffs and Class Counsel, and Typical Contingency Fee Agreements in this Circuit*

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek v. Walgreen Co.*, 311 F.R.D. at 493–94 (citation omitted).

Class Counsel's 27% fee request under the *Pearson* ratio (*i.e.*, fee as a percentage of the fee plus total in direct benefits to the class) plainly falls within the range of reasonableness in this Circuit. *See, e.g., Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (38% of TCPA class settlement fund exclusive of expenses, administration costs, and service award); *Kolinek*, 311 F.R.D. at 501 (36% of TCPA class settlement fund exclusive of notice/admin costs and service award); *Vergara v. Uber Techs., Inc.*, No. 15–cv–6942 (N.D. Ill. Feb. 26, 2018), ECF No. 111 at 3–4 (awarding 36% of first $10 million of settlement fund exclusive of expenses, administration costs, and service award); *Bickel v. Sheriff of Whitley Cnty.*, No. 08-102, 2015 U.S. Dist. LEXIS 38311, at *16 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund). Consequently, the requested fee award falls below numerous other settlements approved as reasonable in this Circuit.

> 5. *The Quality of Performance and Work Invested Support the Fee Request*

Class Counsel's performance and time invested in achieving the $487,500.00 Settlement Fund and other benefits to the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. Class Counsel and their firms spent significant time and resources investigating the Security Incident, interviewing Plaintiffs and prospective plaintiffs, reviewing publications from organizations that track dark web activity, researching the cybercriminal group allegedly responsible for the breach, and reviewing other data about the Security Incident, researching and organizing case law to prepare Plaintiffs' complaints, coordinating prosecution of the case with co-counsel, briefing Defendants' motion to dismiss, drafting mediation briefs, engaging in

informal discovery, preparing for and attending an all-day mediation, drafting motions for preliminary approval, and coordinating notice and claims administration with Simpluris post-preliminary approval. Fee Decl. ¶ 7. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation whatsoever, only achieving the Settlement after litigating Manitou's motion to dismiss and attending a mediation. *Id*. ¶¶ 6–12.

Class Counsel's deep experience in consumer and class action litigation and substantial experience specific to data breach litigation also support the fee award. *See Id*. ¶¶ 1-3. And because Class Counsel was proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the strength of the Settlement obtained for the Class, the extensive exchange of information, and the adversarial nature of the litigation and settlement discussions, Class Counsel respectfully submits that their experience and the quality and amount of work invested for the benefit of the Class supports the requested fee.

### 6. The Stakes of the Case Further Support the Fee Request

The stakes of the case further support the requested fee award. This case involves approximately 11,414 Settlement Class Members whose Personal Information was compromised in the Security Incident. Indeed, without class settlement, individual litigants likely would have to provide proof of causation far beyond what is required here to submit a claim. Such evidence is difficult and expensive to uncover, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have

received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

## B. The Service Award to the Class Representative Should Be Approved

Class Counsel also respectfully request that the Court grant Service Awards of $15,000 to Plaintiffs ($5,000 per Class Representative) for their efforts on behalf of the Class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Indeed, without Plaintiffs serving as Class Representatives, the Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. 10-4038, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach . . . plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested Service Awards for each named plaintiff recognizes this commitment and the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

The Class Representatives spent considerable time pursuing Settlement Class Members' claims. In addition to lending their names to this matter (and their individual originally filed cases), and thus subjecting themselves to public attention, Plaintiffs were actively engaged in this Action. Among other things, they participated in client interviews, publicly attached their names to the lawsuit, assisted in the investigation of the case, provided the documents and other information

needed to draft the Amended Complaint, maintained contact with counsel, reviewed pleadings, remained available for consultation throughout the mediation, answered counsel's many questions, and reviewed and approved the Settlement Agreement. Preliminary Approval Motion at 20. Their dedication to this Action was notable, particularly given the relatively modest size of their personal financial stakes in this case.

Moreover, the amount requested here, $5,000 per Class Representative, is comparable to or less than other awards approved by federal district courts in Wisconsin and throughout the Seventh Circuit. *See, e.g.*, *Novin*, 2026 U.S. Dist. LEXIS 3112, at *10 (approving service awards of $7,000 per named plaintiff); *Evrley v. Foresight Energy LLC*, No. 23-cv-3265, 2025 U.S. Dist. LEXIS 190943, at *8 (C.D. Ill. June 3, 2025) (approving $5,000 service award); *Cardenas v. Zignego Co., Inc.*, No. 22-cv-961-pp, 2025 U.S. Dist. LEXIS 82847, at *16 (E.D. Wis. May 1, 2025) (approving $8,885.77 service award); *Bohnert v. RB Royal Indus.*, No. 23-cv-141-pp, 2025 U.S. Dist. LEXIS 34294, at *12 (E.D. Wis. Feb. 26, 2025) (approving $5000 service award); *Weigand v. Grp. 1001 Ins. Holdings, LLC*, No. 1:23-cv-01452-RLY-TAB, 2024 U.S. Dist. LEXIS 250316, at *12 (S.D. Ind. Oct. 3, 2024) (same); *Linman v. Marten Transp., Ltd.*, No.: 3:22-cv-00204-jdp, 2024 U.S. Dist. LEXIS 225166, at *7 (W.D. Wis. Dec. 11, 2024) (same); *see also King v Trek Travel, LLC*, No. 18-cv-345-wmc, 2019 U.S. Dist. LEXIS 215838, at *5, (W.D. Wis. Dec. 12, 2019) (finding a service award is reasonable because of plaintiffs' "efforts in bringing this claim and the assistance he provided counsel in bringing this matter to resolution."). Accordingly, the $5,000 Service Awards are justified here.

### IV.    CONCLUSION

For these reasons, the Court should grant Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses Award and Service Awards.

Dated: January 21, 2026                              Respectfully submitted,

                                                    By: */s/ Cassandra P. Miller*
                                                          Cassandra P. Miller (*Pro Hac Vice*)
      Stephen J. Pigozzi (*Pro Hac Vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com
spigozzi@straussborrelli.com

Leigh S. Montgomery (*Pro Hac Vice* forthcoming)
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that on January 21, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 21st day of January, 2026.

        STRAUSS BORRELLI PLLC

By: */s/ Cassandra P. Miller*
    Cassandra P. Miller
    One Magnificent Mile
    980 N. Michigan Ave., Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    cmiller@straussborrelli.com